## LOTT vs. MORGAN.

[ACTION TO RECOVER TAXES PAID UNDER PROTEST.]

1. *State taxation of steamboats and vessels.*—The provision of the Federal constitution, (art. I, § 10,) which prohibits a State to "lay any duty of tonnage," applies to and includes vessels which are licensed in the coasting trade, and which are exclusively engaged in the towage and lighterage business in the bay and harbor of Mobile, carrying passengers and freight between the city and vessels at anchorage in the bay; and as to such vessels, the tax imposed by the twelfth paragraph of the second section of the revenue law approved February 22, 1866, (Session Acts, 1865–6, p. 7,) "on all steamboats, vessels, and other water-craft plying in the navigable waters of the State, at the rate of one dollar per ton of the registered tonnage thereof," is unconstitutional and void.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by Thomas P. Morgan, against Elisha B. Lott, and was commenced on the 5th July, 1866. The complaint contained only the common count for money had and received; the amount claimed being twelve hundred and eighteen 36-100 dollars, with interest from the 27th March, 1866. The defendant was the tax-collector of Mobile county, and assessed a tax, on the 13th March, 1866, against two steamboats, called respectively *Hattie* and *Lizzie*, which belonged to the plaintiff. The tax was assessed under the provisions of the second section of the rev-

Lott v. Morgan.

enue law approved February, 22, 1866.   The plaintiff denied the validity of the tax, and refused to pay it; and the defendant having thereupon seized the boats, and taken them into his possession, under the provisions of said revenue law, the plaintiff paid the tax under protest, and brought this action to recover the amount.   The case was submitted to the decision of the court below, on an agreed statement of facts, in which the boats were thus described: "The plaintiff is a citizen of the United States, and resident out of the State of Alabama; and he was on the 27th March, 1866, and during the time they were within the limits of the State of Alabama, the owner of the steamboats 'Hattie and Lizzie; which said steamboats are respectively of the measurement of three hundred and fifty-six 35-100 tons, and two hundred and five 85-100 tons.   Said steamboats were each enrolled in the port of New Orleans, Louisiana, in pursuance of the acts of the congress of the United States, approved February 18, 1793, entitled 'An act for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries, and for regulating the same,' and approved May 16, 1864, entitled ' An act to regulate the admeasurement of tonnage of ships and vessels of the United States.'   Copies of said enrollments are made part of this agreed statement of facts.   Prior to the 27th March, 1866, and between that date and the 1st day of January, 1866, said steamboats were each engaged in the bay and river of Mobile, plying between the city of Mobile and the forts at the mouth of the bay, and the vessels anchored at the lower anchorage in said bay, and altogether within the bay of Mobile, and upon tide-waters navigable from the sea, by vessels of ten and more tons burthen; and were occupied in the towage and lighterage business of the port of Mobile."   It was further agreed, " that if the court shall be of opinion, on the facts herein stated, that the said tax is illegal, and ought not to be enforced or collected, then judgment shall be rendered for the plaintiff, for the amount paid by him to the defendant, with interest and costs; and if the court shall be of opinion, on the contrary, that said tax is legal, and authorized by the laws of the land, then judgment for costs shall be entered against

the plaintiff; and either party may appeal to the supreme court."

On the agreed facts, the circuit court rendered judgment for the plaintiff; and its judgment is now assigned as error.

THOS. H. HERNDON, for appellant.—1. It is admitted, that the State tax is a tax on tonnage, *eo nomine*, and comes within the letter of the prohibition of the Federal constitution; but it is submitted that it does not come within the spirit and meaning of that constitutional provision. The constitution refers to the tonnage of vessels employed in foreign commerce, or commerce between the States, and not to vessels engaged exclusively in the internal trade and navigation of the State.—1 Story on the Constitution, § 1016; *Perry v. Torrence*, 8 Ohio, 524. This duty of tonnage is a part of the taxing power; and if the constitutional prohibition does not apply to vessels engaged in the purely internal commerce and navigation, then the State, by virtue of its general power to levy taxes, may assess the tax in any mode, and to any extent, it may deem prudent and wise.—*De Witt v. Hays*, 2 Cal, 467; *Nathan v. Louisiana*, 8 Howard, 82; 9 Wheaton, 202.

2. The fact that the vessels had been enrolled under the acts of congress, and licensed to carry on the coasting trade, does not exempt them from State taxation. The effect of the license is to authorize the owner of the vessel to carry on the coasting trade, and to navigate the waters of the United States.—3 Gill, 14; 9 Wheaton, 1–212; 17 Howard, 596. But there is no incompatibility between the license and the State tax: the tax does not interfere with the right to navigate.—Same authorities. Besides, the agreed facts in this case show, that the vessels were plying completely within the territorial and jurisdictional limits of the State, and had thus abandoned the coatsing trade, and become incorporated with the property of the State.

3. The provision in the ordinance of 1819, declaring "that all navigable waters within this State shall forever remain public highways, free to the citizens of this State and of the United States, without any tax, duty, impost, or

toll therefor, imposed by the State," has nothing to do with the case. That provision of the ordinance was simply intended to prevent any discrimination against the citizens of other States, and not to limit or interfere with the State's general power of taxation. It is very similar to the ordinance of 1787, (1 U. S. Statutes at large, 51–2, note,) which has been thus construed.—*Perry v. Torrence*, 8 Ohio, 521–6.

P. HAMILTON, *contra.*—The prohibition of the Federal constitution is plain and explicit: "No State shall, without the consent of congress, lay any duty of tonnage." The word *duty*, as defined by Bouvier and Webster, means *tax ;* and *tonnage* means the capacity of a vessel, measured by tons. The constitution says, then, that a tax on vessels, regulated by their capacity, shall not be laid by the State ; while the Alabama statute levies a tax on them, and measures the tax by their tonnage. The conflict is palpable ; and, as if to make it more apparent, the tax is levied only on vessels plying in the navigable waters of the State, and is to be measured by their registered tonnage. The whole subject is under the jurisdiction of the United States, and is regulated by the acts of congress.—*Gibbons v. Ogden*, 9 Wheaton, 186 ; *Sinnot v. Davenport*, 22 Howard, 244.

2. The tax can not be sustained, as falling within the power of the State to levy tolls for the use of improvements on navigable waters. It is not confined to waters on which improvements have been made, and is not limited to vessels which could not use the waters in their natural condition. 12 Conn. 7 ; 18 Conn. 500.

3. The tax is in direct violation of the ordinance of 1819, which specifies the conditions on which Alabama became one of the United States, and which declares that its navigable waters shall forever remain free, "without any tax, duty, impost, or toll therefor," levied by State authority.

BYRD, J.—If we have correctly comprehended the argument of the counsel for the appellant, it may be thus condensed : Admitting that the tax is a duty on tonnage, and that it comes within the letter of the prohibition of the

10th section of the first article of the Federal constitution; still it does not come within the meaning and intent of that section, because the tonnage referred to therein is the tonnage of vessels employed in foreign commerce, or commerce between the States, and not of vessels engaged in the internal trade and navigation of the State; and therefore it is competent for the State legislature to tax such vessels, and to do so by a tax on tonnage, as the most equitable mode or measure of taxation.

However forcible this argument may be, as applicable to a vessel engaged exclusively in the internal commerce and trade of the State; yet we are satisfied that it is not sound, when applied to vessels licensed in the coasting trade, and which are exclusively engaged in transporting cargoes from vessels engaged in foreign commerce, which are bound to the port of Mobile, and are under the necessity of forwarding their cargoes by such vessels as these from their anchorage in the bay of Mobile, and receiving their return cargoes from them, and in towing vessels engaged in foreign commerce, to the city of Mobile.

While the States are prohibited from laying " any duty of tonnage," it seems to be settled, by the weight of authority, that the States may tax the capital invested by its citizens in steamboats. Why a tax may not be assessed upon tonnage, and yet may be upon the capital invested in a vessel, or, perhaps, upon the value of the vessel, or stock held in it, we are not called upon, in this case, to explain or adjudicate. We only say, that the first is prohibited by the constitution of the United States; and we do not feel authorized to depart from the letter, when it is so plainly written, to seek out some other meaning or intent, which, if found, would be in the teeth of the letter.

What we have said is to be taken as applicable *only* to the facts of the case before us. We have come to the conclusion, upon the facts, and the law applicable to them, that the court below committed no error in the judgment rendered; and this conclusion is sustainable upon the principles announced in the following adjudications: *Sheffield v. Parsons*, 3 Stew. & Por. 302; *Gibbons v. Ogden*, 9 Wheaton, 186; *Hays v. The Mail Steamship Co.*, 17 How. 596; *Sinnot*

*et al. v. Davenport et al.,* 22 How. 227, 244-46; *Corley v. Philadelphia,* 12 Howard ; *Harbor Master of Charleston v. Wil. & Ral. R. R. Co.,* 3 Strob. 594; *The State, ex rel. v. City of Charleston,* 4 Rich. 286.

We do not think that the cases of *Battle v. Corporation of Mobile,* (9 Ala. 234,) and *Commissioners of Pilotage v. Steamboats Cuba and Swan,* (28 Ala. 185,) are in conflict with the case of *Sheffield v. Parsons, (supra,)* upon this question, when the facts of the latter case are considered with reference to the doctrine therein laid down and applied.

There is no error in the record, and the judgment of the court below must be affirmed.