## LOTT, TAX COLLECTOR, *vs.* MOBILE TRADE CO.

[BILL IN EQUITY TO ENJOIN COLLECTION OF TAX ON STEAM-BOATS, &C., UNDER ACTS OF 1866 AND 1867.]

1. *"Duty on tonnage;" what tax is not within meaning of the 3d part of section* 10, *article* 1, *of the constitution of the United States.*—The tax to be assessed and collected by the 12th part of section two of the revenue law of this State, at the rate of one dollar per ton, of the registered tonnage of such steam-boats, &c., is not a " duty tonnage," within the meaning of said words, as used in the 3d part of section 10, article 1, of the constitution of the United States.

2. *Ordinance of convention, passed at Huntsville, on the 2d of August,* 1819; *what not in conflict with.*—Nor is that part of said revenue law in conflict with the ordinance of the convention of this State, passed at Huntsville, on the 2d day of August, in the year 1819, which declares "that all navigable waters within this State, shall forever remain public highways, free to the citizens of this State, and of the United States, without any tax, duty, impost, or toll therefor, imposed by this State."

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. N. W. COCKE.

THE bill in this case was filed on the 12th day of October, 1867, by the Mobile Trade Company, a corporation existing under and by virtue of the laws of Alabama, against E. B. Lott, who was tax collector for Mobile ; and sought to enjoin the collection of the State tax, " at the rate of one dollar per ton of the registered tonnage," &c., and the per cent. added for county and school purposes, assessed upon twelve steam-boats, the property of complainant, of the aggregate value of $123,000, under the act of February 22d, 1866, and the act of February 19th, 1867.

The bill alleges that each of said steam-boats is regularly enrolled in the custom-house of the United States, for the port and district of Mobile, and regularly licensed to engage in the coasting trade, under and in pursuance of the revenue laws of the United States, and all the taxes and charges imposed upon them by the United States law and customs, have been and are regularly paid and discharged ; that a part of complainant's business has been, and is, the

running of said steam-boats upon the waters of the Alabama and Mobile Rivers, for the purpose of transporting passengers and freight; that the tax attempted to be collected is, in fact, "a duty of tonnage;" that the portion of said acts, under which defendant is seeking to collect said tax, is unconstitutional and void, and contrary to the act of congress for the admission of the State of Alabama into the Union, and also contrary to the ordinance of the State convention accepting said act of congress, and also contrary to the constitution of the United States; and prays that defendant be perpetually enjoined from collecting said tax. [The ordinance, and portion of the acts referred to, appear in the opinion of the chief-justice.]

The answer of defendant admits that he is about to collect said tax, under the acts referred to, which he avers to be constitutional and legal, and "alleges that said tax is a mere tax upon the personal property of complainants, who are all residents and citizens of Alabama, in the county of Mobile; that they pay no other State or county taxes on said boats owned and used by them, nor are they chargeable, or assessed in any other way by the State of Alabama; *that all of their boats are used, and solely used, in the navigation of the Alabama and Mobile rivers, between Wetumpka and the city of Mobile, entirely and wholly with the internal navigation of the rivers of the State of Alabama, and not elsewhere.*' Defendant also demurred to the bill for want of equity. The answer was sworn to.

The cause was submitted for decree on bill and answer, at the June term, 1868. The chancellor overruled the demurrer, and perpetually enjoined the defendant from collecting said tax.

Joshua Morse, Attorney-General, and Alex. McKinstry, for appellant.

P. Hamilton, *contra*.

[No briefs came into reporter's hands.]

PECK, C. J.—It is insisted by the appellee, that the sections of the revenue laws, by which the tax is threatened

to be collected in this case, are in violation of the constitution and laws of the United States, and therefore null and void.

1. That they are in violation of, and contrary to, the act of congress, entitled "An act to enable the people of Alabama territory to form a constitution and State government, and for the admission of such State into the Union on an equal footing with the original States," approved March 2d, 1819—and, also, in violation of an ordinance of a convention of the people of Alabama, accepting of the propositions contained in said act, as conditions upon which Alabama would be admitted as a State into the Union. The part of said act of Congress, here referred to, is contained in the last part of the 4th proposition offered to said convention, for their free acceptance or rejection, and is in the following words, to-wit : " And that all navigable waters within the said State, shall forever remain public highways, free to the citizens of said State, and of the United States, without any tax, duty, impost or toll therefor."

That part of the said revenue laws that are alleged to be unconstitutional are substantially the same in both acts ; that part of the act of the 22d of December, 1866, to which objection is made, is the 12th part of the 2d section, and is in words following, to-wit: " On all steam-boats, vessels and other water-craft, plying in the navigable waters of the State, at the rate of one dollar per ton, of the registered tonnage thereof, *which shall be assessed and collected* at the port where such vessels are registered, if practicable ; otherwise, at any other port or landing within the State, where such vessels may be."

The first part of said section is as follows : " Sec. 2. Be it further enacted, That taxes are to be assessed by the assessor in each county, on and from the following subjects, and at the following rates, to-wit :"

1. We confess we are unable to see the force of the objection, that this part of the revenue laws, above referred to, is in violation of the said act of congress, and the said ordinance of the convention of the people of Alabama.

The tax objected to, seems to us to be a tax on the boats themselves, *as property*, and not a tax, duty, toll, or impost

on the privilege for navigating the waters of the State and using them as public highways. We think it manifest, if the object and intent of the legislature had been to impose a tax, duty, toll or impost upon the privilege of navigating and using the waters of the State as public highways, other and more appropriate language would have been employed to express their meaning.

That this is a tax upon the said boats, and not upon the privilege of using the navigable waters of the State as public highways, is clear, from the fact that it was to be *assessed and collected* in the same way as other taxes, and by the same officers. If it had been intended to be a tax, or toll upon the privilege, it would, no doubt, have taken the shape and form of a license, to be granted by some officer authorized for that purpose.

The tax itself presupposes the right to navigate the waters of the State, and the fact that the said boats, at the time the tax was assessed and threatened to be collected, were then plying on said waters, is an admission of the existence of the right and privilege of doing so, and that said right and privilege was then being enjoyed without let or hindrance on the part of the State.

2. It is stated in appellee's bill of complaint, and was insisted upon by his counsel, on the argument of the case, that the collection of said tax would be oppressive and unjust, and would result in the destruction of their business, as carriers of passengers and freight, and the total loss to them of the boats, and an irreparable injury to their interest. Such considerations as these should not, and must not be permitted to influence the decision of this court; they are proper considerations to be addressed to the legislature, but not to the courts.

3. We think it a very clear proposition, that a State may lawfully levy a tax on steam-boats and other vessels owned by citizens of the State, plying exclusively on its waters, although registered and enrolled by the United States, and also licensed as coasting vessels under the laws of the United States.—*Battle v. The Corporation of Mobile*, 9 Ala. Rep. 234.

In the case of *Smith v. Turner*, known as one of the

passenger cases, 7 Howard's Rep. 402, Mr. Justice McLean says : " A State can not regulate commerce, but it may do many things which may more or less affect it. It may tax a ship or other vessel used in commerce, the same as other property owned by its citizens."

In the case of *Perry v. Torrence*, 8 Ohio, 521, it is held that a State law, including steam-boats as a portion of the property subject to State taxation, is not unconstitutional.

In the case of *Nathan v. Louisiana*, 8 Howard's Rep. 82, it is said : " The taxing power of a State is one of its attributes of sovereignty ; and where there has been no compact with the Federal government, or cession of jurisdiction for the purposes specified in the constitution, this power reaches all the property and business *within the State which are not properly demonstrated the means of the general government ;* and as laid down by this court, may be exercised at the discretion of the State ; the only restraint is found in the responsibility of the members of the legislature to their constituents."

In the case of *Howell v. The State of Maryland*, 3 Gill's Rep. 14, it is held that the interest in ships and vessels is private property ; and, belonging to a citizen of Maryland, being within her territory, subject to her jurisdiction, and protected by her laws, is a part of his capital in trade, and like other property, the subject of State taxation.

It is not denied by appellee, that a State may levy a tax on steam-boats or vessels, as property ; but it is earnestly and confidently insisted, on the part of appellee's counsel, that the tax in this case is not a tax upon the said steam-boats, as property, but " is a tax of tonnage, and, therefore, that part of the revenue acts of 1866 and 1867, by authority of which this tax is imposed, is in violation of section 10, article 1, of the constitution of the United States, that declares " no State shall, without the consent of congress, lay any *duty of tonnage, &c.* If, therefore, the tax levied on the steam-boats named in appellee's bill of complaint, is " a duty of tonnage," within the meaning of these words, as there used, then the appellee is right, and the said tax must be held to be unconstitutional—unless the fact, that the said boats, belonging wholly to citizens of the State,

and residing within the State, although having a license to engage in the coasting trade, are nevertheless not in any wise used in that trade, but solely engaged in navigating waters, entirely and wholly, within the limits and jurisdiction of the State of Alabama, withdraws them from the protection and benefits of this clause of the constitution.

But first: is this tax "a duty of tonnage," within the meaning of these words, as used in the constitution? Or is it, rightly understood, a tax on the said boats, as property, and their registered tonnage referred to in said revenue act, as a means or mode of determining the amount of the tax intended to be imposed upon them by the legislature? If so, then neither said revenue act, nor· the said tax, is obnoxious to the charge of unconstitutionality brought against them.

We think it would be unjust, taking the language as it is used by the legislature in relation to this tax, to hold that they intended to impose " a duty of tonnage" on boats and vessels plying in the navigable waters of the State. It appears clear to us, that they referred to the registered tonnage of boats and vessels, as a way and mode to determine and ascertain the tax to be assessed on boats and vessels, and to furnish a rule, or rate to govern assessors in their duties. The meaning, we admit, must be determined from the language used, but the whole section, or even the whole act, may be looked to for this purpose. The first clause of section two enacts, "that taxes are to be assessed by the assessor in each county, on or from the following subjects, and at the following rates." The legislature may and should take many things into consideration, in determining the amount of tax to be levied upon the different kinds of property, business and employments, from which revenue is to be raised. They may, in some cases, look to the value of the property, sometimes to its productive character, sometimes to the. uses made of it—in other cases to the profits derived from its employment. Then, again, they may consider whether its use has a good or evil influence upon the people, or the contrary ; on some property an *ad valorem* tax may be levied ; on others a specific tax, and this may be determined and fixed in any way, or by

any means the legislature may see fit to resort to or employ. The quantity, quality, weight, measure, capacity, kind and character of the property may be considered and looked to, and if the property be boats or vessels, we can see no objection to the amount of the tax being determined and ascertained by declaring it shall be so much for each ton of registered tonnage, without being in any wise " a duty of tonnage," within the meaning of the words, as used in the constitution of the United States.

We have carefully examined the authorities referred to by appellee's counsel, and we have found all of them materially different from the case we are considering.

The case of *Alexander, Harbor-Master of Charleston, v. The Wilmington and Raleigh R. R. Co.,* 3 Strobhart, 594, is a case where the vessels were performing regular and successive voyages to the port of Charleston, from the adjoining States of Noth Carolina and Georgia; and, therefore, engaged in the coast-wise trade. The case of *Lott v. Morgan,* 41 Ala. 246, is, as we understand the case, decided against the legality of a tax like the tax in this case, and under the same revenue laws, by authority of which the tax in this case is levied and threatened to be collected, upon the ground that the vessels or boats taxed, were exclusively engaged on the bay of Mobile, as lighters, in the transporting of cargoes to and from vessels engaged in foreign commerce ; otherwise, we infer from the language employed by the court, the tax would have been declared lawful.

So, too, in the case of *The Steam-ship Company v. The Port-Wardens of New Orleans,* the act of the legislature of Louisiana imposed a tax upon *every ship* entering the port of New Orleans.—See 6 Wallace's U. S. Rep. p. 31.

The steamers taxed in that case, were plying between that port and ports in the neighboring State of Texas. That case was decided to be in violation of that clause of the constitution of the United States that confers upon congress the exclusive right and power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes. It is true, the learned chief-justice, in the opinion of the court, says : " We think, also, that the

tax imposed by the act of the legislature of Louisiana, is, in the fair sense of the word, a duty on tonnage ; but this was not necessary to the decision of the case ; and, besides, the steamers taxed were engaged in the coasting trade. This, we think, makes a most material difference between the two cases.

Upon the whole, we are not prepared to admit, and do not admit, that a boat or vessel, owned by citizens of this State, although it may be duly registered and enrolled by the United States, and, also, may have a license to engage in the coasting trade ; yet, if it be wholly and entirely engaged in plying on the waters exclusively within the State, may not be taxed to any extent the legislature may deem proper, and that it can make no difference by what name the tax may be called. If it be engaged altogether in the internal trade of the State, it is, then, entirely a State concern, and the United States can not, and should not, interfere in the matter. The United States is a good and kind mother, and we reverence her very name, but St. Paul says, parents should not provoke their children, lest they be discouraged.

The decree of the chancellor is not in agreement with the views taken of this case, in this opinion. It is thereupon ordered, adjudged and decreed, that the decree of the court below be reversed, the injunction made perpetual by that court, be dissolved, and the bill of complaint be dismissed. And it is further ordered, adjudged and decreed, that the appellees pay the costs of this court, and of the court below.