(*) JORDAN *versus* YOUNG.

A receipter to the officer for property attached on a writ, is incompetent as a witness for the defendant on the ground of interest.

That interest, however, may be dislodged by a deposit made with him of money sufficient for his indemnity, with authority to appropriate it for that purpose.

And this will be the result of such a deposit, though made by the attorney, of his own money, without previous authorization from the defendant.

The master of a vessel, merely as such, has no authority to order repairs in the home port.

A vessel, moored at the wharf, in a town adjoining that in which the owner resides, is at her home port.

Enrollment at the custom house is evidence, but not conclusive evidence, to show who is the owner and who is the master of the vessel.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

ASSUMPSIT on account annexed to the writ for $14,33; the *ad damnum* being laid at $20,00. Upon that writ a schooner was attached, the property of the defendant, which was receipted for to the officer by the firm composed of Charles E. Sawyer and Levi Sawyer. The receipt was signed in the co-partnership name, and was accepted by the plaintiff, as satisfactory security.

The plaintiff having closed his testimony, the defendant called said Charles E. Sawyer and Levi Sawyer, as witnesses.

They were objected to on the ground of interest, as being receipters for the schooner.

The defendant's attorney then, of his own money and without any authorization from his client, lodged in the hands of one of the co-partners $20,00, to indemnify against their liability as receipters; whereupon they were admitted as witnesses.

The plaintiff is a ship carpenter, resident in Portland. The defendant resides in the adjoining town of Cape Elizabeth. The account in suit is for services rendered in repairing the schooner, when lying at the wharf in Portland. It was shown by the plaintiff, *that* the labor was rendered; *that* the repairs were indispensable to the sailing of the vessel; and *that* the vessel was being loaded while the repairs were being made.

What further evidence was given, on either side, the case does not show; but from the instructions requested, and the instructions given to the jury, it is inferable that the plaintiff produced a copy of the custom house enrollment, in which the name of one of the Sawyers appeared as master; and that the repairs were ordered by some person thus acting as master, also, that Capt. Sawyer testified, for the defendant, that his employment as master, ceased upon the arrival of the schooner at Portland, from her former voyage.

The plaintiff requested that the following instructions might be given by the Judge to the jury.

1. That the custom house enrollment is evidence of the ownership of a vessel, and also of the authority of the master.

2. That the owners of a vessel are in all cases liable for repairs done upon her, and that no transaction with an agent, short of actual payment, will discharge them.

3. That the owner of a vessel, in a home port, is liable for necessary repairs, if made under authority of captain, or agent, or factor in charge of the vessel.

4. That if Sawyer was acting as agent, in charge of the vessel, the owner residing at a distance, the owner is liable for necessary repairs ordered by him.

Jordan *v.* Young.

The jury were instructed to consider whether the repairs were made by order of the owner, or by the order of any authorized agent of his; *that* the owner might authorize the master, or any other person to act for him, and to direct the repairs, and if they were found to have been made by his order, or by the order of any such authorized agent, the plaintiff would be entitled to recover; *that* if they did not so find he would not be entitled to recover; *that* the master of a vessel, without any other authority than that derived from his official capacity, was not authorized to order repairs to be made upon a vessel in her home port; *that* if they found the defendant to be a resident of Cape Elizabeth and the vessel to be moored at a wharf in Portland, when the repairs were made, she must be considered to be in her home port, and the master, as such, would not be authorized to order repairs; *that* the enrollment of a vessel is evidence of ownership, and of the master's name at the time when the enrollment was made, but the enrollment does not prove that the same person continued to be master for several months' subsequent to that time ; *that*, if they believed the testimony of the person stated to be master in the enrollment, that he ceased to be master when the vessel was hauled in to the wharf for the winter, and that he was not reäppointed until after the repairs were made, such testimony should be regarded as sufficient proof that, at the time of making the repairs, he was not master, although his name remained as master in the vessel's papers. The instructions requested were not given further than thus specified. The verdict was for the defendant.

To the admission of the two witnesses above named, the refusal to give the requested instructions, and also to the instructions given, the plaintiff excepted.

*O'Donnell,* for the plaintiff.

*Munger,* for the defendants.

WELLS, J. — It is contended by the plaintiff, that the interest of Levi Sawyer and Charles E. Sawyer, who were

Jordan v. Young.

receipters in their co-partnership name for the property attached in the suit, and who were introduced as witnesses by the defendant, was not removed by the deposit with one of them for the benefit of both of a sum of money equal to the damages demanded in the writ. It does not appear, that they were liable as receipters for any greater sum, nor is it contended that they were, but it is insisted, that the act of the attorney was unauthorized. The cases cited show, that where money is placed in the hands of a receipter by the party calling him, sufficient to cover his whole liability, he is a competent witness for such party. Although an attorney might not be under any legal obligation to deposit money in such case, there is no law that forbids him from doing it, and when it is received by the witness as a fund out of which he may discharge his liability, he can no longer have any interest in the controversy. He is supplied with money, not a mere indemnity, which may fail, to the full extent of any claim, that can be made upon him, and the act being done for the benefit of the defendant, it may well be presumed, that he would assent to it. The question does not turn upon the legal liability of the defendant to reimburse the attorney, but upon the effect of the payment of the money to the witness. And it is not perceived, why its reception does not place him in a position entirely indifferent between the parties.

It does not appear, by the facts stated in the exceptions, who ordered the repairs, which were made upon the vessel, or in whose employment she then was. The jury were instructed, " that a master of a vessel without any other authority than that derived from his official capacity, was not authorized to order repairs to be made upon a vessel in her home port, that if they found the defendant to be a resident of Cape Elizabeth, and the vessel to be moored at a wharf in Portland, when the repairs were made, she must be considereed to be in her home port, and the master as such would not be authorized to order repairs."

It might be inferred from this instruction, that the repairs

were ordered by the master, but the case does not so state. But if they were ordered by him, the instruction appears to be correct. The master of the vessel can do all things necessary for the prosecution of the voyage. But this authority does not usually extend to cases where the owner can personally interfere, as in the home port. If the vessel be at a home port, but at a distance from the owner's residence, and provisions or other things require to be provided promptly, then the occasion authorizes the master to pledge the credit of the owner. Abbott on Shipping, (Perkins' ed.) 178; *John* v. *Simons*, 2 Adol. & Ell. N. S. 424; *Stonehouse* v. *Gout*, Ib. 431. There is nothing in the present case to indicate an exigency so pressing as to preclude an application to the owner before the repairs were made, and the master, merely as such, could not make the owner liable for them. The owners of a vessel are not liable for repairs, unless they are made by their order, or by the direction of some one, who has a right to act for them.

The enrollment is evidence of ownership, but not conclusively so, and the owners may part with the control of the vessel by chartering her or letting her on shares, and thus not be liable on contracts made by those in whose employment she may be. *Dame* v. *Hadlock*, 4 Pick. 458; *Colson* v. *Bonzey*, 6 Greenl. 474. The master is agent of the owners only so long as he acts for them. They can discharge him at any time, and put an end to his authority. The enrollment is evidence of what it declares at the time it is made, and it may be presumed that the same facts exist until a change is shown. But as other persons than those, whose names appear upon the enrollment, may be shown to be owners, so it may be shown that the person, whose name is enrolled as master, has ceased to be such.

The Judge did not withdraw from the jury the right of deciding upon the credibility of the person stated to be master. The meaning of the instruction is, that if the jury believed the facts, to which the witness testified, the legal con-

struction of them, notwithstanding the enrollment, would show that he was not master when the repairs were made.

*Exceptions overruled.*

TENNEY, HOWARD and APPLETON, J. J., concurred.