### MITCHELL & WIFE VS. ETTER, ET AL.

The Statute of limitation (*sec.* 6, *ch.* 99, *Eng. Dig.*) begins to run, in favor of a purchaser of land sold for non-payment of taxes, against the former owner (unless he is within the saving clause;) at the date of the sale, whether the purchaser is in the actual possession of the land or not.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

MR. GARLAND, for the appellants, argued this case and that of *Mitchell vs. Kinsworthy*, (21 *Ark.*) at length, upon the points decided in that case. On the defence of limitation he said:

If it is true, as contended by Mitchell and wife, that this tax deed is void, it is useless for any purpose. The defence of limitation cannot be made under such a deed. In *Wallingford vs. Fiske*, 24 *Maine*, 386, the court ruled "*that a tax sale and deed being void could give no rights whatever, they were as ineffectual to give seizin as they were to give title.* *Angell on Limitations*, 394; *Moore vs. Brown et al.* 11 *How.* 414. If the deed could be used at all in this respect, it could be done only in connection with possession. *Pillow vs. Roberts*, 7 *Eng.* 822; (13 *How.* 472;) 4 *McLean, Sup., Angell, Sup.* In this case, there is no evidence at all of Etter, Brittin or Andrews being in possession of the lands. They continued to pay taxes after Etter's purchase, but this is not sufficient of itself. *Sabor vs. Williams*, 10 *Watts R.* 142; *Ewing vs. Burnett*, 1 *McLean* 266; *Reed vs. Field*, 15 *Vermont* 672.

Even if possession be proved, it must be such a possession as

is totally at war and inconsistent with the right and title of any one else to the property in question. The possession must exclude positively all idea, of any other person having a title to the land. *Angell on Lim.* 380, 381 *et seq.*; *Ib.* 390 *et seq. and notes.* *Smith vs. Burtis* 9 *John. Rep.* 180.

The statute relied on (*English Dig. p.* 696, *see.* 6) excepts minors, etc., and gives them three years after the disability is removed to sue. In this case, there was a minor, born several weeks after George M. Gray died, and lived till June, 1853. This child, under the will of Gray, owned the whole property jointly with Mrs. Gray, (Mitchell,) and there could be no division until the child became of age. We hold that the disability of one of the joint owners prevented the statute bar relied on. The principle is, the infancy of one of several persons having a part interest in land will protect the rights of those of full age, from the operation of the statute. *Lahiffe vs. Smart*, 1 *Bailey R.* 195; *Thompson vs. Gaillard*, 3 *Richardson Rep.* 418.

Watkins & Gallagher, for the appellees.

Mr. Justice Compton delivered the opinion of the Court.

This was a bill in equity brought by Mitchell & wife against Etter and others, to cancel a tax title, under which the defendants claimed certain lands lying in the county of Hempstead.

At the hearing in the court below, the chancellor was of opinion that the tax title, as to a part of the lands, was valid, and decreed accordingly, upon the ground that there was no irregularity in the assessment; and in this did not err, according to the decision of this court in *Kinsworthy vs. Mitchell & wife*, decided at January term, 1860, where, as to this point, the facts were the same as in this case. As to the residue of the lands, namely, the S. W¼ Sec. 26, T. 11, R. 25 W; S. E.¼ Sec. 22, T. 10, R. 27 W; S. W¼. Sec. 23, T. 10, R. 27 W.; W½ S. E.¼ Sec. 23, T. 10, R. 27 W., the tax title was declared to be void, and was canceled, for the reason that these lands were sold for the taxes of three years, when the taxes for one year only remained unpaid.

That this irregularity made the sale void, was also decided in *Kinsworthy vs. Mitchell & wife, Supra.* But it was contended for the defendants in the court below, and it is insisted here, that though their title was void, yet the complainants were barred of their remedy by the limitation act, prescribing the time within which actions shall be brought for the recovery of lands sold for taxes. *Eng. Dig. Chap.* 99, *sec.* 6. The act provides that " all " actions against the purchaser, his heirs, or assigns, for the re- " covery of lands sold by any collector of the revenue for the " non-payment of taxes, and for lands sold at judicial sales, shall " be brought within five years after the date of such sale, and " not thereafter; saving to minors, and persons of unsound " mind the period of three years after such disability shall have " been removed."

The lands are claimed by Mrs. Mitchell under the will of her former husband; they were sold for taxes on the 3rd November, 1851, Mrs. Mitchell being then a widow; and the bill was filed on the 3d December, 1856. The lands were wild and uncultivated, and from the date of the sale to the filing of the bill, were not in the actual possession of either of the parties to this controversy, though the defendants, after the sale, always openly claimed the lands, and paid taxes on them. These are the facts, and the question is, whether the complainants are barred. Before proceeding further, however, we will remark, for the purpose of laying it out of the question, that an undivided half of the lands was at the date of the tax sale vested in the infant daughter of Mrs. Mitchell, to whose interest Mrs. Mitchell, under the will of her said husband, succeeded by right of survivorship, her daughter having died in June, 1853, while yet an infant under the age of twenty-one years. Of course, the statute did not begin to run until the death of the infant, and upon no possible construction of it could we hold that Mrs. Mitchell was barred as to the half thus acquired, there not being five years from the death of the infant to the commencement of the suit. But she is barred as to the other half, if it be held that the period of limitation begins at the date of the sale, and we

know of no principle of law, or rule of construction, which would warrant us in holding that it does not. The words are " all actions, etc., shall be brought within five years after *the date of such sale*, and not thereafter." This language is strong and unambiguous, leaving no room for construction, unless it be of that astute character, not to be indulged in, by which the provisions of any statute, however plain, might be got rid of, if the court should happen to think them unwise or impracticable. With the policy of enactments the courts have no concern. That belongs to another department. If the statute does not begin to run from the date of the sale, when does it begin ? Must there be an actual possession before it begins? That cannot be. The act is silent as to possession, and if by construction possession was required, the act could be applied in but few cases, and would be almost useless, for it is a well known fact, that most of the lands sold for taxes in this State, are wild and unimproved, and so remain for years after the sale, the purchaser seldom or never entering upon them; and this was eminently so, at the time the act was passed, and we must suppose the Legislature knew the fact. Furthermore, to hold that the statute does not begin to run until there is an actual possession, would make the words " date of such sale" mean nothing; and to say that the statute begins to run from the date of the sale, provided the purchaser takes possession then, would be no better, for it would be equivalent to saying that the action should be brought within five years after *possession taken.* Any such construction would be obviously at war with both the letter and spirit of the enactment. See *Falkner vs. Dorman*, 7 *Wis.* 388.

We are aware that the Supreme Court of Pennsylvania, upon the construction of a statute of that State similar to our own, have held in *Waln vs. Shearman*, 8 *Serg. & Rawle* 536, that the period of limitation for the institution of a suit for the recovery of land sold for taxes under their statute, is to be computed from the time the purchaser enters into possession, and not from the time of the sale, overruling the previous decision of the same court in *Parish vs. Stevens*, 3 *Serg. & Rawle* 298. The ground

upon which the decision in *Waln vs. Shearman* was put, as appears from the reasoning of the learned judges who delivered opinions in the case, was that unless the purchaser went into actual possession, there was no mode of legal proceeding, under their peculiar system of laws, by which the legality of the tax sale could be tested, and the sale held void if found to be so before it ripened into an indefeasible title by lapse of time. Thus, it was said by *Tilghman* C. J., "Suppose now, that a purchaser at the sheriff's sale for taxes, should decline to take possession for five years, and that under the laws of the commonwealth, no action for the recovery of the lands could be brought against a person not in possession, could it be imagined that under such circumstances the man whose land had been sold for taxes, should be forever barred the opportunity of showing that the sale had been made contrary to law? Would it not be more reasonable to say, that such monstrous injustice could never have been intended, and in such case the general expressions in the act of Assembly should be so modified as to extend only to persons who took possession under their purchase, and to allow the former owner five years for bringing his action from the time when he first might have brought it, viz: from the time of the purchaser's entering into possession?" And by Duncan J., it was said: " When the Legislature limited this time of action to five years, they looked not only to a possession, *but to a possession under the sale,* to an action in which the validity of the sale could be tried. But where the possession is vacant, what action can be brought? A personal action could not be sustained against the purchaser; no action would lie against him merely for buying at commissioners' sales. Besides, if he resided out of the county, it would not follow his person, it would not be transitory. Whatever the action is, it must be local; and you must find an actor and an act done in the county, or you can have no action. Ejectment is the only action. If the old form were not abolished, you might proceed as on a vacant possession, but that would not answer the views of the Legislature; the legality of the sale could not be tried. But that

form is abolished, and the substitute, the writ of ejectment (and no other writ will lie) is given by the act of the 21st March, 1806; and this writ must be brought against a person *in rerum natura*, a real person, who hath the actual possession."

Now, whatever peculiarities there may be in the jurisprudence of Pennsylvania, it is manifest that, elsewhere, the former owner whose land has been sold for taxes, may, by bill in equity, have the purchaser's title declared void, if it be so, and his deed delivered up and canceled, though he never was in possession. Such is the uniform practice in this State—indeed, the bill in this case is one of that character—and such we understand to be the rule generally, upon the principle that the *quia timet* jurisdiction of a court of equity may be successfully invoked to remove clouds from title. 2 *Story Eq. sec.* 700; *Hamilton vs. Cummings*, 1 *John. Ch. R.* 520; *The Chautaque County Bank vs. White*, 6 *Barb. S. C. R.* 605; *Shell et al. vs. Martin*, 19 *Ark.* 139. So that the reason of the rule laid down in *Waln vs. Shearman* has no application here; the strained construction put upon the statute in that case, seems to have been adopted as a sort of necessity growing out of the fact that there was no mode of trying the validity of the tax title, unless the purchaser had gone into possession. There being no such necessity with us, the decision in that case cannot be regarded as authority in this.

Unless we could disregard and virtually nullify the plain language of the act, we must, and do hold, that the period of limitation begins at the date of the sale. The consequence is that Mrs. Mitchell's remedy as to one half the lands in controversy, is barred.

So much of the decree as relates to the lands, as to which Mrs. Mitchell is held to be barred, must be reversed; in all other respects, the decree must be affirmed, each party paying one half the costs in this court.