# Mayor, Aldermen, &c. of Mobile v. Baldwin.

# Stone *et als. v.* Mayor, &c. of Mobile.

*Bills in Equity to enjoin Collection of City Taxes.*

1. *Charter of Mobile; certain sections of, construed.*—The proper construction of the thirty-seventh section of the act of incorporation of Mobile, which authorizes the levy of taxes upon all real and personal property within the city, when construed in connection with other provisions of the charter, is that an annual tax was intended on the value of property, which, though personal, has a *situs* within the city, as fixed and permanent as its nature permits, and a change of which is not contemplated.

2. *Same.*—The fifty-fourth section of that charter, authorizing a tax upon "itinerant or transient merchants, steamboats or other vessels, remaining in said corporation less than a year," intended, among other things, to subject to taxation steamboats or other vessels which have a temporary *situs* within the city, not continuing a year, yet distinguishable from the casual, transitory presence of such vessels within the city, in the mere course of navigation and trade.

3. *Taxation, situs of property; as affecting right of.*—In determining the liability of personal property to taxation, the actual *situs* and not the domicil of the owner, is in general the material enquiry; and if a nonresident separates his personalty from his domicil, and bring it within the city, so that it is not distinguishable from like property there, or from similar property coming casually within its jurisdiction in the usual course of its use and enjoyment, he thereby withdraws it from his domicil and commits it to the protection of the jurisdiction in which it has its actual *situs*, and subjects it to taxation accordingly.

4. *Steamboat; when not liable to city taxation in Mobile.*—A ferry-boat, plying daily between the eastern shore of Mobile bay and the city of Mobile, in the transportation of freight and passengers, and returning each night to the eastern shore, where its owner resides, and from which it commences its daily trips, is not liable to taxation by the corporate authorities of Mobile;

and the case is not altered, because the vessel is registered in the custom-house at Mobile, the residence of the owner being in that collection district, though not in that county.

5.  *Same.*—The non-residence of the owner of the vessel, *prima facie* relieves it from city taxation; if, however, the actual *situs* of the vessel is in Mobile, and its presence there not merely transitory in the course of its employment or trade, the vessel, although of necessity lying in the water at the wharf, is *within* the city for the purposes of taxation, and liable accordingly.

6.  *Taxes; when collection of, should not be enjoined.*—A merely illegal and void assessment sought to be enforced against personalty, and affecting only a single individual, or several jointly owning a specific article of personal property, presents no ground for equitable interference; neither irreparable mischief, nor multiplicity of suits can be apprehended, and the owner of the property has an adequate remedy at law.

APPEAL from Chancery Court of Mobile.

Heard before Hon. H. AUSTILL.

These appeals were from decrees of the court below on bills filed to enjoin the collection of certain taxes assessed by the city of Mobile on certain steamboats, and involving kindred questions, were considered together.

In the first case, the Mayor, Aldermen and Common Council of Mobile *et al.* appealed from the decree of the court below.

The facts of that case were as follows:  The appellee, H. C. Baldwin, filed this bill against the corporate authorities of the city of Mobile, and the city tax collector, to enjoin them from seizing and selling the steamboat "Anne," of which he was owner, for payment of certain taxes assessed against the vessel by the city of Mobile.

The bill alleged that the "Anne" is a small steamer employed by complainant as a ferry-boat, crossing the bay from the eastern shore in Baldwin county to the city of Mobile, leaving Baldwin county in the morning and returning from Mobile in the evening, and has been so employed during the last eight years; that Baldwin is not a citizen of Mobile, and does not reside within its limits, and has not for more than three years past; nor has said boat been used or kept within the city except to visit the city in the day-time, as above stated, returning to her home in Baldwin county at night; that said boat is licensed and enrolled and running on tide water only, in the business aforesaid, and that Baldwin, during the time aforesaid, paid all the taxes on the value of said boat in Baldwin county.

The bill further alleged that a specific tax, amounting to about one hundred dollars per annum, had been assessed against said vessel, for the past eight years, and the city tax

[Mayor, &c. of Mobile v. Baldwin; Stone et als. v. Mayor, &c. of Mobile.]

collector had threatened to seize and sell the vessel to pay said taxes, and has actually employed persons to seize the boat on her arrival in Mobile, on her daily trips; and will do so unless enjoined.

The bill further alleged that the assessment is wholly void and without warrant of law, and that "the seizure of the boat and the stoppage of her regular business, will greatly injure and damage complainant, and greatly discommode the public dependent on her for freight and passage."

The defendants answered, averring "that the assessment was legal, and said boat liable to seizure and sale for the payment of said tax," and that the boat was "licensed and enrolled under the laws of the United States at the port of Mobile, and that the city of Mobile is her home port." The other allegations of the bill were admitted, except as to injury which would follow the seizure of the boat and the inconvenience to the public thereby.

The defendants also demurred; *first,* "because complainant has a plain, complete, and adequate remedy at law; *second,* because the case stated by the bill does not show that complainant is entitled to the relief sought; *third,* because the bill does not show that complainant was not liable for the payment of the tax."

The case was submitted for final decree on the bill, answers, pleading, and testimony. The only evidence offered was that of Baldwin, which sustained the allegations of the bill.

The chancellor overruled the demurrer, granted the relief prayed, continued in force the preliminary injunction, "so long as the residence of complainant and the business of the boat remained in *statu quo,*" and taxed the costs against the city of Mobile.

This decree is now assigned as error.

Stephens Croom, for the appellants in Baldwin's case, argued as follows: *First.* Baldwin by the allegations of a bill does not make a case for relief. No circumstances of hardship, illegality, or irreparable injury are set forth. He has an adequate remedy at law.—High on Injunctions, § 362 and § 461; Cooley on Taxation, 538; *Lockwood v. St. Louis,* 24 Missouri 21; *Van Cott v. Supervisors,* 18 Wis. 247; *Weaver v. State,* 30 Ala. 553. The case of *Morgan v. Parham* (16 Wallace) is an illustration of the fact that Baldwin had a plain and adequate remedy at law—to-wit, trespass against the tax collector for seizing his boat. The demurrers

to the bill should have been sustained. *Second.* The cases relied on by appellee to show that his boat is located, for the purposes of taxation, in the county of his residence, show that his boat was liable to taxation in the city of Mobile. The case of *Morgan v. Parham* distinctly holds that the registry of the vessel fixes her *situs* at the port of registration. The object of the registration law, among other things, is to locate the vessel, to fix its *situs.* Throughout all the decisions the port of registration is invariably spoken of as her "home port." The "Anne" is "enrolled and registered at the custom-house in the city of Mobile." It is submitted that the vessel could not be more effectually located as "personal property within the city of Mobile." The State law has directed that "the tax on steamboats, vessels, and other craft shall be assessed and collected at the port or landing where the vessel is registered."—Acts 1874-5, p. 9, § 9. Section 37 of its charter authorizes the city to levy taxes on real and personal property within the city. Section 54 gives it power to levy taxes on *itinerant* or *transient* vessels, which shall remain in said corporation less than a year. If the vessel is not liable under the general revenue law, or under section 37 of the charter, the vessel is certainly a "transient" visitor—an "itinerant"—and can not escape her share of the burthen of taxation, for the support of the city from which she draws her entire profit and trade.

JNO. T. TAYLOR, for appellee.—Under the facts of this case, neither Baldwin nor his boat were located *within* the corporate limits of Mobile, and were not subject to city taxation.—11 Wallace, 423; Dillon Munic. Corp. §§ 625-7; 66 Wallace, 472. The clause of the charter with reference to "itinerant" vessels has no effect in this case. It can be applied only "to such vessels as *remain* in and *do business* in Mobile for several months, (as was the habit there), and thus have become incorporated with the property of the city, or whose owner lived there. It never could have been intended to authorize the city to tax visitors to Mobile on the buggies in which they rode, or the money in their trunks, or a steamboat which merely touches there to discharge passengers; and if intended to apply to vessels from other States, would be void.—16 Wallace, 472. The tax sought to be enjoined, is wholly void and unlawful. Chancery has jurisdiction to enjoin.—38 Ala. 156; 45 Ala. 220; *Tallassee Manufacturing Co. v. Speigner,* 49 Ala.

[Mayor, &c. of Mobile v. Baldwin; Stone et als. v. Mayor, &c. of Mobile.]

In the second case, *Stone et al.* appealed from the decree of the court below, the facts being as follows:

Stone and others, the owners of the "Lotus, No. 2," whose vessel was then lying at the wharf in the city of Mobile, filed their bill against the corporate authorities of the city of Mobile, and one Sheffield, its tax collector, praying that they be enjoined from selling the vessel, which the tax collector had already seized, for the purpose of paying certain taxes assessed against said vessel, or from taking any further steps for its collection, and that the defendants be compelled to deliver up the vessel.

The bill alleged that the owners of the boat for more than five years past have been and are citizens of Pickens county, Alabama; that during all this time the boat has been registered at the port of Mobile, and pretty generally engaged during that time in navigation and commerce between the port of Mobile and the city of Columbus, Mississippi. It assailed the tax on the ground that the owners of the boat did not reside in Mobile, where the assessment was made, but in Pickens county; that the boat was not assessed through her owners, but a specific tax imposed on the boat; and because the boat while at the wharf is upon a portion of the high seas, and in no sense personal property in the city of Mobile. It is also alleged, " that to sell said boat to satisfy an invalid claim which they are in no way liable to pay, would be irreparable damage to them; that said boat is engaged in carrying on navigation and commerce between Mobile and Columbus as aforesaid; that she has some of her freight on board, and her day for leaving on her voyage is Friday next; that many suits may be brought against orators for a failure to transport said freight now on board, upon the several bills of lading given for it."

The defendants answered, setting up the portions of the charter referred to in the opinion of courts, averring the legality of the tax, &c., and assigned, also, several grounds of demurrer; none of which need be more particularly noticed.

The cause was submitted on motion to dissolve the injunction, upon the denials in the answer and for want of equity in the bill. The chancellor, being of opinion that the taxes were not wholly unauthorized, and that the bill was without equity, dissolved the injunction, and dismissed the bill.

This decree is now assigned as error.

BOYLE & OVERALL, for appellants.—The tax in this case

[Mayor, &c. of Mobile v. Baldwin; Stone et als. v. Mayor, &c. of Mobile.]

was levied by a *municipal corporation*, and is *wholly* void. This takes the case out of the rule, which in general forbids a court of chancery to enjoin collection of taxes on personalty.

In *Morgan v. Parham*, 16 Wallace, 474, the court decided that the vessel was not to be taxed at the city of Mobile, because the owner resided in New York—*although the vessel was registered at Mobile*, and engaged in transporting freight between Mobile and New Orleans.

If the city of Mobile can not levy a specific tax on the boat for the privilege of lying at the wharf, long enough to load and unload her cargoes, (*Morgan v. Parham, supra*), upon what principle can the boat be held to be *personal property in Mobile*, and liable to municipal taxation there, although the owner resides elsewhere? If the construction of the clause about "itinerant vessels" is as contended for by the city, every town on the river above Mobile could be authorized to tax the boat on the same principle, and this would be confiscation. Under the facts of this case, the tax by the city of Mobile is a tax upon inter-State commerce. The owners of the "Lotus" are liable to be taxed where they reside. Laws are not to be construed to provide for double taxation. All that the State law has done is to authorize the State tax to be collected at Mobile. The vessel is certainly within the jurisdiction of the State, and it can make the tax due it payable where it pleases. This does not make the property liable to city taxation in Mobile. The boat, while lying at the wharf, was, in no legal sense, *in the city* within the meaning of the charter of Mobile.—*St. Louis v. Ferry Co.* 10 Wallace, 423.

BRICKELL; C. J.—These cases involve kindred questions, and have been considered together. The facts of the first case, are, that the appellee, Baldwin, owning a steamboat, the "Anne," which is registered in the custom-house in the city of Mobile, (the county of Baldwin being in that collection district), and is employed as a ferry-boat, daily plying from the eastern shore of Mobile bay to the city of Mobile, transporting freight and passengers. The boat returns at night to the eastern shore, and there remains until the succeeding day, when its trips are commenced. The facts of the second case, are, that the appellants are residents of the county of Pickens, owning a steamboat, "Lotus, No. 2," which is employed in plying from the city of Mobile to Columbus, in the State of Mississippi, transporting freight

and passengers. On these boats the corporate authorities of the city of Mobile imposed a municipal tax, and were proceeding in its collection. The legality of the tax being disputed, these bills were filed to enjoin its collection.

It is apparent the material question presented is the liability of the vessels to municipal taxation, and the solution of this question depends on the extent of the power to impose taxes which the legislature has conferred on the city authorities. For, "it is a principle universally declared and admitted, that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the *power be plainly and unmistakably conferred.*"—Dillon on Mun. Corp. § 605. The thirty-seventh section of the charter, or act of incorporation of the city of Mobile, empowers the mayor, aldermen and common council "to lay taxes upon the real and personal estate," &c., *within the city.* The tax to be laid in pursuance of an assessment and valuation thereof. The fifty-fourth section authorizes the imposition of a tax on *itinerant or transient merchants, steamboats or other vessels,* remaining in said corporation *less than one year.* When the thirty-seventh section is read and considered in connection with other provisions of the charter, it is clear the tax thereby contemplated is an annual tax on the value of property, which, though personal, has a *situs* within the city as fixed and permanent as its nature permits, and a change of which is not contemplated. The fifty-fourth section contemplates a tax on merchants not having a fixed residence within the city, or not there pursuing their business for the length of time which would subject them to an annual tax—a temporary, as distinguished from a permanent business. It also contemplates a tax on steamboats or other vessels which may have a temporary *situs* within the city, so that if they remained during the tax year they would become liable to the annual tax assessed on such property, not remaining one year, yet being within the city, not casually, or while *in transitu,* or merely in the ordinary course of business or commerce, but temporarily incorporated with the property of the city, and there kept or maintained, because of the advantages which may be there derived. There may be steamboats which come into Mobile to navigate the waters flowing into Mobile bay, during the winter and spring, when these streams are navigable by boats of a larger size than can navigate them at the other seasons of the year, and when cotton and other agricultural products, the principal articles of water transportation, are

ready for shipment. When such products have been moved and the waters reach such a stage that they are navigable only by smaller boats, they may seek employment elsewhere. Or there may be boats, or other vessels, which may make the city the place of mooring or lying up, while undergoing repairs, or while awaiting a rise of the waters, or awaiting profitable employment, and this may be the habit, yet they would not remain long enough at any one time to be the subject of the annual tax contemplated by the thirty-seventh section. The residence of the owners may or may not be within the city, and though to such boats or vessels protection is, of necessity, extended by the city government, from all taxation they would escape if the corporate authorities had not the power conferred by the fifty-fourth section. Under the thirty-seventh section it is the *situs* of the property—the permanent, as distinguished from a temporary *situs*—which renders the property liable to municipal taxation. Under the fifty-fourth section it is the temporary *situs*, not continuing one year, yet distinguishable from the casual, transitory presence of the property within the city, in the mere ordinary course of business or commerce, that determines its liability. The *situs* of the property, not the domicile or residence of the owner, is the test to which the liability to taxation must be submitted. The doctrine that personal property has no locality, that it follows the person of the owner, however true as to the disposition of or succession to such property, is often an unimportant inquiry in determining whether such property should bear its just and legal proportion of public burthens. If it be visible, tangible property, or if it be property not having a visible, tangible existence, yet a legal existence, capable of an actual *situs*, it is the actual *situs*, not the domicile of the owner, most material to be considered. Protection is the legal and constitutional consideration of taxation, and that must be presumed to be afforded where it is a necessity and a duty. If the owner of personal property separate it from his domicile—commits it to another jurisdiction, so that it is not distinguishable from other property of a like kind within that jurisdiction, or from similar property casually, in the usual course of its use and enjoyment, coming within that jurisdiction—he takes it away from the jurisdiction of his domicile and commits it, not to the comity, but to the power of the place to which he transfers it. A vessel merely touching at Mobile, in its ordinary course of navigation and trade, would not become liable to taxation, State, county, or municipal.

It is, while there, entitled to protection, and would receive it, from all governmental authorities. Taxation could not be imposed, for the protection afforded is not of the character of which it is the consideration. It is afforded on principles of public policy and sound morality, lying at the foundation of organized society and civil laws. Or, Mobile may be one of the *termini* of a vessel—it may in the course of its employment touch there merely to discharge and receive freight and passengers, one or both, returning to another port or place. Such use and employment would not separate the vessel from the domicile of the owner and subject it to municipal taxation. Its presence in Mobile would be casual, in the mere ordinary course of navigation and commerce.

The appellee, Baldwin, employed the steamer "Anne," only according to its capacity for use, from his domicile to the city of Mobile. The city was one of the *termini* of its daily trips. When not employed, the mooring place of the boat was not within the city, but at the domicile of the appellee. This was the point from which the trips were commenced, and to which the boat returned when these were concluded. A stage-coach, or a market-wagon, or other vehicle, plying daily to the city, returning daily to the home of its proprietor, without the city, or the horse which one may daily ride into the city, remaining there on business or pleasure during the day, would have been as fitting subject of municipal taxation. The *situs* of these would have been as completely separated from the domicile of the owner as was the *situs* of this boat.—*St. Charles v. Noble*, 51 Mo. 122. It was not intended by the legislature, in conferring the power to tax *transient or itinerant* steamboats, or other vessels, to obstruct ingress, egress, or regress to the city, or impose burthens on its commerce. The purpose was to subject to taxation property, which, because of its incorporation with the property of the city, derived protection and benefit from the municipal government. The words *transient or itinerant* are not to be accepted in their broadest sense. If they were, they would embrace every merchant traveling to, or passing through the city on his business, though his actual locality was elsewhere, and every vessel that might touch at the city, though driven there by the stress of weather. The sense in which they are used is illustrated by a general law, enacted at the same session of the legislature with the charter, entitled "an act for securing taxes from transient dealers."—Pamp. Acts 1865–6, p. 36. This act declared all persons engaged in the sale of goods, &c., who had com-

menced business since first June, 1865, *transient dealers.* It provided for the issue of a license to them, and if they became permanent dealers, by continuing in business for twelve months, the tax paid as transient dealers should be deducted from their annual tax. Engaging in and carrying on business in the State created the liability *for the tax,* and not a mere temporary presence here, though the course of business may have required it. If personal property has not a determinate *situs* different from that of the domicile of the owner, as a general proposition, it is taxable only at the latter. Under the charter of the city, it must have within the city a *situs,* fixed and permanent, or a temporary *situs,* as distinguished from a transitory presence in the course of trade and commerce, to subject it to taxation. Adopting the language of the Supreme Court of the United States in *St. Louis v. Ferry Company,* 11 Wall. 431, the relation of the "Anne" to the city was merely that of contact there, as one of the *termini* in its transit across the bay in the prosecution of its business. The owner never separated it from the jurisdiction of his domicile, and incorporated it with the property of the city.—*Hays v. Pacific Steamship Co.,* 17 How. 599; *State v. Haight,* 30 N. J. 428; *People v. Niles,* 35 Cal. 282. The registration of the boat in Mobile is not material. It could not be registered elsewhere, the residence of the owner being within that collection district, and it is this residence which fixes her home port.—*St. Louis v. Ferry Company, supra; Jordan v. Young,* 37 Maine 276; *S. B. Superior,* Newberry, 181. The tax on this boat was, therefore, unauthorized and illegal.

Whether the tax on the "Lotus" can be maintained, the facts stated in the bill are not full enough to justify us in determining finally. The legality of the tax is assailed by the bill on no other grounds than that the residence or domicile of the owners was without the city; that the boat, while lying at the wharves in Mobile, was on the high seas, and because the tax was assessed against the boat, and not the owners. If in this last respect the assessment is erroneous or irregular, a new assessment which may be made under the charter, would cure the defect. The assessment of personal property should be made to and against the owner, if he be known. If he is unknown, the fact should be so stated, and the assessment may be on the property, describing it properly. An erroneous or irregular assessment does not justify the interference of a court of equity to restrain the enforcement of the tax.—*Cooley on Taxation,* 540.

[Mayor, &c. of Mobile v. Baldwin ; Stone et als. v. Mayor, &c. of Mobile.]

The fact that the owners of the boat do not reside within the city, *prima facie* relieves it from municipal taxation. It is, however, the actual *situs* of the boat, permanent or temporary, which it is most material to consider in determining the liability. If the boat had such *situs* within the city, under the views of the charter we have expressed, it is the subject of municipal taxation. If it had not, and its presence in the city was merely transitory, in the course of its employment, it was not liable to such taxation. For all purposes of taxation, the boat though of necessity lying in the waters at the wharves in the city, *was within the city*, if that was its *situs;* taxable under the thirty-seventh section of the charter if such *situs* was fixed and permanent; under the fifty-fourth section if it was temporary. In the present condition of the case we abstain from saying more.

In *Gold Life Insurance Co. v. Lott*, 54 Ala., we held a court of equity should not, by injunction, interfere to restrain the collection of State and county taxes, unless in addition to illegality, hardship, or irregularity, the case was brought within some of the established principles of equitable jurisdiction. It is said by Mr. High : "It will be found on examination that courts of equity have been inclined in the case of assessments by municipal corporations to relax somewhat the stringency of the rule of non-interference as applied to the collection of State taxes. Though it is difficult to perceive any sufficient reason for such distinction, yet the distinction itself remains."—High on Inj. § 369. He adds : "Though relief by injunction is more freely granted in cases of municipal assessments, still if the objections may be urged and the grievances adjusted in a court of law, equity will not interfere with the assessment."—*Ib.* § 370. There may be cases in which a court of equity will interfere to enjoin municipal authorities from usurpation or abuse of power, affecting injuriously the citizen or his property, within their jurisdiction. A tax may be levied, for a purpose wholly unwarranted, affecting all the property and all the citizens resident within the territory of the municipality, and its collection may involve such peril to the citizen, or such multiplicity of vexatious suits, that the court in the exercise of its power to confine corporations within the limits prescribed by their charters would, by injunction, restrain the levy and collection. When such a case arises, it may be that the stringency of the rule laid down in *Alabama Gold Life Insurance Co. v. Lott*, can be relaxed. But, in cases like the present, of an assessment on personal property, affecting only

a single individual, or several jointly owning a specified article of personal property, there is no ground for interference. Multiplicity of suits, irreparable mischief, is not affirmed, and cannot be apprehended. Admitting the tax is illegal and void, the corporation is merely pressing the payment of an unfounded, unjust demand, and threatening the commission of a personal trespass, to compel payment. If it persists, the complainants have an adequate remedy at law. In Dillon on Munic. Cor. § 738, it is laid down that " equity will not restrain even an illegal and void tax assessment where it is sought to be enforced against *personal property only*, since here the party has an adequate remedy at law; nor in such a case will equity interfere because several join in the bill asking it." In *Dowe v. City of Chicago*, 11 Wall. 108, which was a bill to enjoin the city from collecting a tax on shares of the capital stock of a national bank, the court says : " Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of shares for its payment constitute themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the preventive remedy by injunction can be invoked." If in a case of this character a court of equity should intervene, from anything we can see to the contrary, it could intervene if individuals not occupying any official relation were about seizing and selling the boats without legal process for the satisfaction of a demand, the justice and legality of which the claimants disputed. Thus the court could draw to itself jurisdiction of every threatened trespass upon personal property. The cases of *Tallassee Manufacturing Co. v. Spigener*, 49 Ala. 262, and *So. Express Co. v. Mayor*, *ib.* 404, are not opposed to, but in harmony with this view. Admitting the illegality of the tax, the demurrer to the bill in the first case was well taken, and should have been sustained. For the error in overruling it the decree in that case is reversed, and a decree must be rendered dismissing the bill. The appellee must pay the costs in this court and in the court of chancery.

In the second case, the demurrer was properly sustained, and the decree must be affirmed.