# Jones v. Randle.

*Bill in Equity to enforce Vendor's Lien, and to avoid subsequent Sale of the Lands for Non-payment of Taxes.*

1. *Statutes; construction of.*—No statute should be construed, if such construction can be avoided, so as to leave it possible for any man to forfeit or lose his lands, without ever having had the opportunity of testing, by suit, the legality of the proceedings, by which it is proposed to divest him of his freehold.

2. *Lands sold for taxes; when statutory bar begins to run.*—The statutory bar to actions brought for the recovery of real property sold for the non-payment of taxes, provided by section 92 of the Revenue Law of 1868 (Pamph. Acts 1868, p. 327), now embodied in section 464 of the Code of 1876, begins to run only from the time the deed is executed by the judge of probate to the purchaser at tax sale.

3. *Same; when purchaser acquires the fee.*—Whenever lands are properly sold and conveyed for unpaid taxes imposed on the lands themselves, the purchaser acquires the fee.

APPEAL from Macon Chancery Court.

Heard before Hon. N. S. GRAHAM.

On December 1st, 1868, E. Troupe Randle, as the administrator *de bonis non* of the estate of James F. Carter, deceased, under and in pursuance of a decree of the Probate Court of Macon county, sold certain lands belonging to said estate to James Ray and William Thompson, who, in accordance with the terms of sale, paid one half of the purchase money in cash, and gave their note for the balance, and were let into the possession of the lands under their purchase. The sale was reported to the court, and by it confirmed. The bill in this cause was filed on July 18th, 1879, by Carter, as such administrator, against the personal representatives and heirs of Ray and Thompson, both of them having died without

[Jones v. Randle.]

paying the balance due by them on the purchase money of said lands, for the purpose of enforcing a vendor's lien for the payment of such balance. In the bill it is averred, that "Thomas R. Jones and William B. Jones are now in possession of said lands, claiming the same as their own by some sort of purchase unknown to orator, but with notice of orator's lien on said lands to secure the payment of the money due on said purchase;" and they also are made parties to the bill.

To the bill the defendants, Thomas R. and William B. Jones, filed a plea, averring, in substance, that on the 5th May, 1873, the lands described in the bill were sold by the tax collector of Macon county for the payment of taxes, and that at the sale Dillard & Jones, a firm composed of James R. Dillard and defendant, William B. Jones, became the purchasers thereof; and that on the 20th April. 1876, a deed to said lands was executed to them by the judge of probate of said county, which deed was duly acknowledged and recorded, and is made an exhibit to the plea ; that on the 20th December, 1877, Dillard and his wife by deed conveyed to the defendant, Thomas R. Jones, his undivided interest in said lands; that Dillard and Jones, the purchasers at the tax sale, went into the possession of the lands on the day of the sale to them by the tax collector, to-wit: May 5th, 1873, and held open, continuous, uninterrupted and adverse possession of said lands, claiming the same as their own, until December 20th, 1877, and that from and after that date, "and until the filing of this plea, these defendants have been in the possession of said lands, holding the same openly, continuously, uninterruptedly, and adversely to all persons whatever. And they say that the plaintiff is barred of this suit by the limitation of five years, provided by law to prevent the recovery of lands sold for taxes, set forth in the Code of Alabama, section 464." After this plea was filed, the complainant amended the bill, averring that " the defendants, William B. and Thomas R. Jones, pretend, that some five or more years prior to the filing of this bill they purchased said lands at a tax sale, and under said sale took possession, and have held possession of said lands adversely, and claiming the same as their own, and that under and by virtue of such sale they have acquired a fee simple title." The bill, as amended, also charges that the tax sale " was illegal and invalid, and that said tax deed executed to the purchasers is invalid, and does not confer upon said defendants any right or title in and to said lands superior to orator's said lien." The bill, as amended, also seeks to charge William B. and Thomas R. Jones with rents while they were in possession.

[Jones v. Randle.]

On the submission of the cause, said defendants read in evidence a deed executed by the judge of probate of Macon county to Dillard & Jones, conveying to them the lands described in the bill, and reciting the sale thereof to them by the tax collector on the 5th May, 1873, as averred in the plea; and also a deed executed by Dillard and wife to Thomas R. Jones conveying to him their interest in the lands. They also introduced evidence tending to show possession under the tax sale, as alleged in their plea.

On the hearing, had upon pleadings and proof, the chancellor caused a decree to be entered, overruling the defendants' plea; and this decree is here assigned by them as error.

R. M. WILLIAMSON, for appellant.

JAMES T. NORMAN, contra.

(No briefs came to the hands of the reporter.)

STONE, J.—In the revenue law of 1868, section 92— Pamph. Acts, 327, Code of 1876, § 464—it is provided, "that no action for the recovery of real property sold for the non-payment of taxes, shall lie, unless the same be brought within five years after the date of the sale thereof for taxes as aforesaid, (anything in the statute of limitations to the contrary notwithstanding)," with a proviso in favor of minors and insane persons, who are allowed one year after the removal of their respective disabilities. Revenue is the life-blood of the commonwealth, and it can be supplied only by taxation. The government can not wait on slow and tedious processes for the collection of its revenue, and hence the rules and rulings, statutory and otherwise, which have established a separate and peculiar system for the assessment and collection of taxes, and for testing the legality of the assessment.—Cooley on Taxation, 536; *Ala. Gold Life Ins. Co. v. Lott*, 54 Ala. 499; *Mayor v. Baldwin*, 57 Ala. 61; *Elyton Land Co. v. Ayres*, 62 Ala. 413; *Nat. Com. Bank v. Mayor, Ib.* 284; *Underhill v. Calhoun*, 63 Ala. 216. This statute was conceived in the same spirit. The intention was to prescribe a short limitation for testing the validity of such sales, thereby encouraging purchasers, and forcing an early determination of their legality. Purchasers would take some risks, when they knew the fate of the adventure must be determined in a few years. They might hesitate, if delay and uncertain litigation lay before them—delay in the inception of the litigation, and uncertainty in its duration. This the legislature intended to guard against.

[Jones v. Randle.]

It will be observed, that the statute copied above makes no mention of the title to be made on a tax sale, and is not, by any expression in its language, limited to suits founded on tax titles. "No action for the recovery of real property sold for the non-payment of taxes," is its language. Construed by its own terms, it would seem, that the legislative intent was, that at the end of five years after such sale for unpaid taxes, if the purchaser had not previously obtained possession, or commenced a suit for the recovery of possession, the five years statute would be a complete bar to any suit afterwards instituted by him; and, on the other hand, if the original owner, being out of possession, should bring suit after the expiration of the five years, to recover possession of the tax-purchaser, or any one in possession in the purchaser's right, the five years statute would be a complete bar to his right of recovery. Tracing title through a tax sale is always difficult, by reason of the great strictness required in proving a substantial compliance with every duty enjoined by the statute.—2 Brick. Dig. 469, §§ 28, 29. The legislature, no doubt, had this also in view when they enacted this short statute of limitations. Time not only takes off witnesses, but it obscures recollections, and destroys the evidence of facts. When rights are dependent on a minute detail of facts, it is legislative wisdom to require their speedy assertion.—*Bowman v. Cockrill*, 6 Kans. 311.

Passing from argument to adjudged cases, we find in several of the States statutes of limitation, similar to ours in their most important features. A statute of Pennsylvania declared that " no action for the recovery of lands [sold for taxes] should lie, unless the same be brought within five years after the sale thereof for taxes." In a very well considered case.— *Waln v. Shearman*, 8 Serg. & R. 357—the plaintiff in ejectment was the original proprietor of the land sued for, and proved title in himself. The defendant was in possession when the suit was brought, but had not been in possession five years. He claimed under a purchase at tax sale, made more than five years before suit brought, and a tax deed made to him. The question was, whether the limitation commenced running from the day of the sale, or from the time the purchaser took possession. The lands were unoccupied at the time of the sale, and there was no statute in force at that time, which authorized the plaintiff to test his title by suit. He could not sue, for there had been no one in possession under the tax-purchase to be sued. TILGH-MAN, C. J. delivered the opinion of the court, and held the statute did not commence to run, until the purchaser took possession. Among other things, he said : "Suppose, now,

[Jones v. Randle.]

that a purchaser at sheriff's sale for taxes should decline to take possession for five years, and that under the laws of the commonwealth no action for the recovery of the lands could be brought against a person not in possession ; could it be imagined that under such circumstances, the man whose land had been sold for taxes, should be forever barred the opportunity of showing that the sale had been made contrary to law ? Would it not be more reasonable to say, that such monstrous injustice could never have been intended, and in such case the general expressions in the act of Assembly should be so modified as to extend only to persons who took possession under their purchase, and to allow the former owner five years for bringing his action, from the time when he first might have brought it, viz : from the time of the purchaser's entering into possession." This case was decided after two arguments pronounced by the court to be able, and overruled a former hasty opinion by the same court. Justice GIBSON concurred, and DUNCAN, the other justice, delivered an able concurring opinion. Mr. Cooley—Taxation 378—speaking of this and other decisions, says : "These decisions have perhaps given effect to the statute as near as was possible, consistent with fundamental rules of right." That ruling was ever afterwards followed in Pennsylvania, until 1824—twenty years afterwards—when a statute was enacted, that " any person wishing to bring an ejectment for land on which no person resides, and which lands have been sold for taxes, may bring his action and serve the writ on the person who purchased the said lands." Under this later statute it was held in *Robb v. Bowen*, 9 Barr (9 Penn. State), 71, that in the case of unseated or unoccupied lands, the statute commenced running in favor of the purchaser at tax sale, from the time he *received the deed.* This principle was re-affirmed in an opinion by AGNEU, J. in *Johnston v. Jackson*, 70 Penn. St. 164. See also *Cranmer v. Hall*, 4 W. & Serg. 36 ; *Bigler v. Karns*, Ib. 137 ; *Bayard v. Inglis*, 5 W. & Serg. 465.

A statute of Iowa declared, that " no action for the recovery of real property sold for the non-payment of taxes shall lie, unless the same be brought within five years from the date of sale," with a proviso giving further time to infants and insane persons. It will be observed, that their statute is precisely like ours, and we suppose ours was borrowed from theirs, as theirs is older than ours. Theirs is a literal copy of the Pennsylvania statute of 1804, which we have been discussing, and we suppose was copied from it. It was so stated in the opinion in the case of *Eldridge v. Kuehl*, 27 Iowa, 160, which presented the queston of its construction. The question was very elaborately considered by that court, of which

[Jones v. Randle.]

Judge DILLON was then chief justice. The court said: "If the five years run from the day the real estate is struck off to the bidder, the owner would be barred his action before any title would be vested in another, and that, too, without any right of action before the bar attached. Such a construction ought not to be adopted, because it would make the statute of limitation both unjust and unconstitutional. These results can be avoided by holding that the word 'sale' is used in its legal sense. Thus construing the statute, it would give to the owner five years from the delivery and recording of the deed, whereby the *title* becomes vested in the purchaser, in which to bring his action. This is a reasonable construction of the language used, and avoids the unjust and unconstitutional results above specified. These may be properly called strong and overruling reasons for giving to the word 'sale,' in the section quoted, a meaning different from that which it manifestly has in other sections." In this, the court only declared a correct rule of construction. "For as a conflict between the statute and the constitution is not to be implied, it would seem to follow, where the meaning of the constitution is clear, that the court, if possible, must give the statute such a construction as will enable it to have effect." Cooley, Const. Lim. 184-5. We suppose the constitutional provision the Supreme Court of Iowa thought would be violated, by construing the word 'sale' to mean the knocking down the lands to the best bidder, is section 14 of our declaration of rights— found in most or all of the State constitutions—"that every person for any injury done him in his lands" etc. "shall have a remedy by due process of law." It would seem no statute should be construed—if such construction can be avoided—so as to leave it possible for any man to forfeit or lose his lands, without ever having had the opportunity of testing by suit the legality of the proceedings, by which it is proposed to divest him of his freehold. The principle declared in *Eldridge v. Kuehl, supra,* was followed by that court in the following cases: *Henderson v. Oliver,* 28 Iowa, 20; *McCready v. Sexton,* 29 Ib. 356; *Thomas v. Stickle,* 32 Ib. 71; *Brown v. Painter,* 38 Ib. 456. See also *Baker v. Kelley,* 11 Minn. 480.

Subsequent to the rendering of the decisions in Iowa, cited above, the legislature of that State seem to have changed their statute, and made it express on its face what their Supreme Court had declared to be its true interpretation. The amended statute required the action to be brought within five years *after the treasurer's deed is executed and recorded.* We learn this change of statute, by comparing the copy found in *Eldridge v. Kuehl,* 27 Iowa, 160, with a copy given

in the opinion of Judge Woods of the United States Supreme Court, in *Barrett v. Holmes*, 102 U. S. 651. *Laverty v. Sexton*, 41 Iowa, 435, and *Barrett v. Love*, 48 *Ib.* 103, had followed the ruling in *Eldridge v. Kuehl*, and Judge Woods, in his decision, only followed the rulings of the Iowa Supreme Court. There is this additional argument in favor of that court's ruling. A purchaser at tax sale, by the mere fact of being set down as the highest bidder, acquires no title to the property, and can maintain no action for its recovery. Until he obtains a deed he can neither maintain nor defeat a recovery in eject-ment. He has no title. He can not obtain a title until after the expiration of two years. Section 85 of the Revenue Law of 1868. Accidents or litigation may cause further delay. The original owner of the land has the title, and may sue as his possession is disturbed. Holding that the limitation of five years commences runing at the time the property is cried off, gives to such original owner five years within which to sue, while the tax-purchaser, with the best diligence he can employ, can not have exceeding three years. The limitation evidently applies as well to actions brought against tax titles, as to those which base their right of recovery upon them. Such is the plain import of the language of the statute, and such are the rulings in Iowa, Wisconsin, and wherever they have statutes like ours. It should require strong and explicit language to justify us in holding, that the legislature intended to prescribe this marked inequality between the two classes of litigants, and that, in a system which evidently had for its aim facility and promptness in the collection of revenue, they should provide for the delinquent tax payer so great advant-age over the purchaser at such sale.

The statute, Code of 1876, § 464, shows on its face, that it was conceived in the spirit, and with the intent of declaring a short period for testing the validity of tax titles. Actions "for the recovery of real property sold for the non-payment of taxes," are the actions for which the five years limitation is prescribed. Now, no matter by whom the action may be brought, whether by the tax-purchaser or the original owner, the validity of the tax title can not be inquired into, until the title—the deed—is executed. Until then, there is no title to be asserted or questioned. If the purchaser sues, he can not recover on his certificate of purchase, because it confers no title. If the original owner sues the purchaser before the latter obtains a deed, the validity of the sale can not be tried, for the purchaser can not defend on his mere certificate of purchase. So, in no event, can the legality or validity of the sale be tested in ejectment, until the pur-

chaser obtains a deed. This tends strongly to vindicate the Iowa rulings, and those of Pennsylvania on the act of 1824.

A further argument. When lands are sold for taxes, the tax collector is required to give the purchaser a certificate of purchase.—Code of 1876, § 448. This certificate is assignable by indorsement, and the assignment vests in the assignee all the right and title of the original purchase.—*Ib.* § 449. There is no provision that the tax payer whose lands have been sold for taxes, shall have any notice of this assignment, or succession of assignments, as the case may be. He is not required to be informed, and may not know who holds the certificate of purchase, and who is the owner of the right and title under the purchase. When the deed is made, this fixes and declares the ownership, and no further assignments, or transfers of the right and title under the purchase can be made except by deed; and deeds of conveyance of lands are usually recorded, and notice of their existence thereby given. These reflections have been suggested by a remark found in the opinion of the court in *Mitchell v. Etter*, 22 Ark. 178, that "the former owner, whose land has been sold for taxes, may, by bill in equity, have the purchaser's title declared void, if it be so, and his deed delivered up and cancelled, though he never was in possession.". How can a bill be sustained to cancel a deed, before it has any existence, and before the law authorizes it to be made? And if it be proposed to file a bill to prevent the cloud, before the making of the deed, how is the original owner to know in whose hands the certificate of purchase may be found, so as to make that person a defendant to his bill? Other difficulties suggest themselves, which would be likely to arise in any attempt to have the cloud upon the title removed before the deed is executed to the purchaser, but we will not swell this opinion by pointing them out.

The case of *Pillow v. Roberts*, 13 How. (U. S.) 472, arose under the statute of Arkansas, which provided that "all actions aginst the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, * * shall be brought within five years after the date of such sales, and not after." When the action was brought by the original owner, the purchaser had been in possession over ten years, claiming ownership. The record does not disclose when the action of ejectment was instituted, but the case was decided in the Supreme Court more than seven years after the tax-purchaser acquired his deed. The five years limitation was pleaded in bar. The opinion was by Justice GRIER. He said: "with regard to the five years limitation, we need not inquire whether the legislature intended

[Jones v. Randle.]

that the action should be barred, where the purchaser at the tax sale was not in possession. In this case, possession for more than five years by the purchaser from the collector and those claiming under him, was proved. In order to entitle the defendant to set up the bar of this statute, after five years adverse possession, he had only to show that he and those under whom he claimed, held under a deed from. a collector of the revenue, of the lands sold for the non-payment of taxes." We are not able to determine positively, whether Justice GRIER intended to assert, that the five years adverse holding which would constitute a bar, should be all the time under a deed from the collector of the revenue, or whether it was enough for the purchaser to show five years possession, with deed at the time of the trial. We incline to the opinion, that he regarded the actual crying off of the lands at tax sale, and not the making of the deed, as the true date of the "sale" mentioned in the statute. It will be observed, that the Arkansas statute makes no provision for suits *by* the purchaser. It provides a limitation to suits *against* the purchaser, and extends no further. In *Mitchell v. Etter*, 22 Ark. 178, the construction of this statute came before the the Supreme Court of that State, and they held that the five years limitation commenced to run from the time the collector made the sale, and not from the date of the deed. They held further, that the purchaser, to invoke the provisions of the statute, need not be in possession. In other words, their holding was, that inasmuch as their statute only operates in favor of the purchaser, if the original owner takes no step to test the legality of the sale for five years, he shall not be afterwards heard to question the regularity of the proceedings which culminated in the sale. The statute and ruling in Arkansas seem to have been conceived in the single purpose of aiding the collection of revenue. The bar in that State operating only in favor of the purchaser, much that we have said above, while commenting on the statutes of Pennsylvania, Iowa and this State, does not apply to the statute of that State.

The Wisconsin statute provides, "that any suit or proceeding for the recovery of lands sold for taxes, except in cases where the taxes have been paid, or the lands redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed of sale, and not thereafter." Another statute is spoken of in their decisions, but we have not found it. Its provisions are, that the record of the deed of purchase is a constructive possession of vacant possessions by the purchaser, which authorizes an action or proceeding against him, without actual possession by him.

VLO. LXVIII.

Many rulings are found in that State, construing this statute.— *Edgerton v. Bird,* 6 Wisc. 527 ; *Falkner v. Dorman,* 7 *Ib.* 388 ; *Knox v. Cleveland,* 13 *Ib.* 245 ; *Sprecker v. Wakeley,* 11 *Ib.* 432; *Dean v. Early,* 15 *Ib.* 100 ; *Parish v. Eager, Ib.* 532 ; *Jones v. Collins,* 16 *Ib.* 594.; *Whitney v. Marshall,* 17 *Ib.* 174.; *Lybrand v. Haney,* 31 *Ib.* 230 ; *Austin v. Holt,* 32 *Ib.* 478. These cases shed no light on the question before us, except that, like the Iowa rulings, they hold the bar of the statute alike applicable to the original owner and to the purchaser, when suing to recover possession. We adopt the Pennsylvania and Iowa rulings on statutes from which ours was evidently taken, and hold that the statutory bar begins to run only from the time the deed is executed to the purchaser at tax sale.

Another question was decided by the chancellor, and has been argued before us, namely : the quantum of interest acquired by the purchaser at a sale of real estate for unpaid taxes. In *Dyer v. Br. Bank at Mobile,* 14 Ala. 622, is a statement by the court—probably a *dictum*—that at a sale of lands assessed to a person, whose duty it was to pay the taxes for that year, the purchaser acquired only the interest of such person. We do not think this is a proper construction of our present law. On the contrary, we hold that whenever lands are properly sold and conveyed for unpaid taxes imposed on the lands themselves, the purchaser acquires the fee.—*Doe v. Hearick,* 14 Ind. 242 ; Bur. on Tax, § 122.

We agree with the chancellor, that the plea of appellants opposed no valid defense to the bill, and it was rightly overruled and disallowed.

Affirmed.