BATTLE v. THE CORPORATION OF MOBILE.

STEWART v. THE SAME.

1. The city of Mobile, under the provisions of its charter, authorizing the levy of a tax upon real and personal estate, within the city, may lawfully assess a steamboat plying on the waters of the Alabama river, although it is registered and enrolled as a coasting vessel under the laws of the United States, if owned by citizens of the State resident in Mobile.

2. And the city has the same power if the owner of the boat is a citizen of another State, yet resident here during the business season, although the boat may be assessed, and taxes paid, in the State of which the owner is a citizen.

Writ of Error to the Circuit Court of Mobile.

THESE causes, in the court below, were submitted on the following statement of facts, to wit:

The Mayor, Aldermen, and Common Council of the city of Mobile, pursuant to the act of 14th January, 1844 pp. 1844, 175, passed an ordinance for the collection of a city tax; the assessors of taxes were duly elected and qualified; they duly assessed the steamboat New World, the property of William Stewart, the defendant in one of the suits, as a part of his property: And also assessed the steamboat Montgomery, as a part of the property of J. & J. Battle, the defendants to the other suit, at values sufficient to realize the sum of $100, in taxes. The tax is not a specific tax on steamboats, but they are included in the statement of the personal property of the defendants respectively. Rives, Battle & Co. is a firm doing business in the city of Mobile, and the defendants, Battle, are members of that firm, and they reside in the city. Wm. Stewart is a citizen of Pittsburg, in Pennsylvania, and has his domicil there, but spent the winter and spring of 1844-5, since January, in Mobile; being interested in several steamboats that ply on the Alabama and Tombigbee rivers. The boats named are regularly licensed steamboats, under the laws of the United States, and are of one hundred tons and

upwards burthen; they are registered at the custom house in Mobile, in pursuance of the acts of Congress, and since the 1st of December, 1844, and until after the assessment have regularly plied on the waters of the Alabama river, between Mobile and Montgomery, touching at the intermediate ports and landings, conveying passengers and freight for compensation; making regular trips between those cities in the usual way. The steamboats were in the city of Mobile when the assessment was made, and when it became necessary for the work of assessment to be completed. Stewart pays taxes on his interest in the steamboat New World, in Pennsylvania, and his boats return to Pittsburg after the regular boating season in Alabama terminates, and ply on the Ohio and Mississippi rivers in the summer.

The acts of incorporation of the city of Mobile, and the ordinance under which the tax is claimed, are made a part of the case agreed. The question submitted to the court is, whether the property in the named boats is the subject of a tax by the city of Mobile, under the circumstances stated. If it is, they agree that judgment may be rendered for the plaintiff for one hundred dollars in each suit; if otherwise, the judgment to be for the defendant.

The Circuit Court gave judgment for the plaintiff, and this is now assigned as error.

E. S. DARGAN, for the plaintiffs in error, insisted, that by the ordinance of the convention which formed the constitution of the State, it is agreed that the navigable waters within the State shall remain public highways, free to the citizens of the State, and of the United States, without any tax, duty, impost, or toll therefor, imposed by the State. [Digest, xliii.]

J. A. CAMPBELL, contra, cited the act of 1844, (Acts of Assembly, 1844, p. 182, § 19,) to show the authority of the corporation to levy the tax.

By a subsequent agreement between the counsel of the parties, they request the court to determine—1. The right to tax steamboats, as the property of resident citizens; and

2. Whether the city is authorized to tax steamboats, being the property of citizens of other States, elsewhere paying taxes in the State of their residence, but the boats employed here during the boating season.

GOLDTHWAITE, J.—In the matters submitted for decision, by the case agreed, no question whatever is made as to the regularity or validity of the proceedings, by means of which the city corporation claims to levy the tax in dispute. The charter of incorporation invests the city authorities with power to lay taxes on both real and personal estate *within the city*, making no distinction as to any persons, and not exceeding forty cents on every hundred dollars in value of property. [Acts of 1844, 175, § 19.] The taxes for the current year of 1844-5, were fixed by a resolution of the city authorities, at forty cents on every hundred dollars in value of the assessment. The general question as to the delegation of the taxing power to civil corporations, is not disputed, and indeed has several times been decided by us in other cases. [Intendant of Marion v. Chandler, 6 Ala. Rep. 899; Estabrooks v State, Ib. 653.]

We understand the defendants in the suits, to claim exemption from taxation, on the ground that the State, in convention, has declared that its rivers shall forever remain public highways, without the imposition of any duty, tax, or impost by the State. Also, that the property sought to be taxed, are vessels employed in the coasting trade, regularly enrolled and licensed as such, and therefore not subject to taxation by any State authority.

The power of taxation is a necessary accompaniment of the power of legislation, and is limited only by the extent of that power. It necessarily, therefore, operates upon all persons and property belonging to the body politic. Its relinquishment ought not to be presumed, but rather should be demonstrated by those who claim exemption. [Providence Bank v. Billings, 4 Peters, 514.] Now although it may be conceded, that the State has relinquished the right to levy a specific tax on vessels navigating her rivers, and is debarred by the constitution of the United States from interfering with the regulation of commerce, whether foreign or between the

Battle v. The Corporation of Mobile.

several States, yet it by no means follows, that she has re-
linquished, or is in any way prevented from exercising, the
power of taxing the property employed within her limits, in
these avocations. It sometimes may be quite difficult to de-
termine, whether a tax is liable to constitutional objection,
as improperly interfering with subjects which are exclusive-
ly within the scope of the legislation of the Congress of the
United States, but the exercise of the power, to the extent,
and in the manner, it is here assumed, seems to be conceded
even in those cases where the Supreme Court of the United
States has held other taxes to be inhibited, on constitutional
grounds. Thus, in McCullough v. The State of Maryland, 4
Wheat. 316, it is admitted that the power of taxing the peo-
ple, and their property, is essential to the very existence of
government and may be legitimately exercised (by the States)
on the objects to which it is applicable to the utmost extent
to which the government may choose to carry it. And again,
although in that case, it was held, the State possessed no
power to tax the Branch of the Bank of the United States,
located within her limits, yet her power to tax real property
owned there by the Bank, as well as any interest which her
citizens might hold in the Bank, is expressly admitted, when
the tax is common with other property of the same descrip-
tion, throughout the State. To the same effect is the lan-
guage of that court in Brown v. The State of Maryland, 12
Wheat. 419, and Weston v. City Council of Charleston, 2
Peters, 449.

Independent of these decisions, which directly admit the
validity of a general tax, by the authority of the State, upon
real or personal estate, although it may be owned by a cor-
poration erected by the United States, it is believed to be the
common practice, over the entire Union, to tax the personal
estate of citizens, although that may be employed in foreign
or domestic commerce. Without the existence of such pow-
er in the several States, it is entirely evident that the bur-
thens of government would be most unequally distributed,
and those would oftentimes contribute the least who receive
the greatest benefits. If property invested in the commer-
cial marine may be withdrawn from taxation, the same ex-
emption would doubtless extend to investments for trade, be-

tween the several States, and thus the taxes would fall, if not exclusively, yet most unequally, upon the other interests of society. Upon the whole, we think it clear, that this tax,. not being a specific one, applicable alone to steamboats, but a general one, extending to all personal estate, is free from constitutional objection.

2. Another question, bearing alone upon the suit as to one of the defendants, is yet necessary to be examined. The power of taxation has already been shown to extend to all persons and property within the sovereignty of the State. To this extent the doctrine is admitted by all our jurists, but the principle of sovereignty is carried much further by writers upon public law, who contend, that a State possesses the power to bind its own subjects, though in foreign countries. [Story's Confl. Laws, 20.] And with reference to taxation, it has been held, that a general tax upon turnpike stocks, made a citizen of Massachusetts liable to pay for shares owned by him in a corporation in another State, although the stock was there taxed. Whatever doubts existed as to construing a general statute to this extent, was afterwards cut off by an express provision by law, to levy the tax, whether the corporations were within or without the State. [Barrington v. Berkshire, 16 Pick. 572.]

Whatever may be the correctness of such a decision, under such facts, we entertain no doubt whatever, that the personal estate of a citizen of another State, when employed in this State, is as much the subject of taxation as property of the same kind, belonging to our own citizens; and the fact, that it is also elsewhere held subject to taxation, is not a circumstance which interferes with the exercise of the power in the state where it is.

There seems to be no error in the judgment of the Circuit Court. Affirmed.