# National Dredging Company v. The State.

*Proceedings to Abate Assessment of Taxes.*

1. *Taxation of personal property; determination of its situs.*—In determining the liability of personal property to taxation, its actual *situs*, and not the domicil of the owner, is the material inquiry; and if personal property is brought into this State for the purposes of carrying on certain work, and its business here is not merely transitory,

[National Dredging Co. v. The State.]

but for an indefinite period, it becomes incorporated with the property in this State for revenue purposes, and is taxable here, notwithstanding the domicil of its owner is in another State.

2. *Same; floating property not exempt from taxation.*—The fact that property is floating, and may be moved from place to place by water, does not exempt it from taxation when it is otherwise taxable.

3. *Same; when tug-boat registered elsewhere taxable.*—A tug-boat, although sea-going propelled by steam, and registered at the port of its owner's domicil in another State, is taxable in this State, when its business is wholly in Alabama, and it is to remain here for an indefinite time.

APPEAL from the City Court of Mobile.

Heard before the Hon. O. J. SEMMES.

The appellant is a Delaware corporation. Under a contract entered into with the Government of the United States it continued the dredging of Mobile Bay, and in January, 1891, moved certain parts of its machinery—such as tug-boats, scows, &c.—to Mobile Bay. Some time after the 1st of May, 1891, the tax assessor of Mobile county put on the tax books of said county an assessment of the dredges, tug-boats and scows of the National Dredging Company, amounting to $73,000.00. Thereupon the said Dredging Company presented its petition to the Board of Revenue of said county, praying that body to abate such assessment and expunge it from the tax books of 1891. In answer to said petition of the Dredging Company, the Board of Revenue held that certain items of property, amounting to $40,000, had been improperly assessed against the Dredging Company, and ordered that the original assessment be reduced to $33,000. From that judgment the company appealed to the City Court of Mobile, where a special finding of facts was made, and upon that special finding judgment was rendered confirming the judgment rendered by the Board of Revenue. This special finding by the court was the facts as contained in an agreed statement of facts. From such judgment of the City Court the present appeal is taken, and the same is here assigned as error. The opinion contains an epitome of the special finding.

GAYLORD B. & F. B. CLARK, and HANNIS TAYLOR, for appellant.—The *situs* of the property which is sought to be taxed is the controlling question. If personal property has not a determinate *situs*, different from that of the domicil of its owner, as a general proposition, it is taxable only at said domicil.—*Mayor, &c., of Mobile v. Baldwin*, 57 Ala. 61; *Trammell v. Connor*, 91 Ala. 398; *Boyd v. City of Selma*, 96 Ala. 144; 11 So. Rep. 397. If it appears, that at the time of

the assessment of the property it was merely in the State temporarily, "in the course of its employment or trade," that it had no permanent *situs* in this State, then the tax imposed is illegal. It is shown by the facts in this case that there was no intention on the part of the appellant to allow this property to permanently remain in the State of Alabama, or to give it a *situs* here. The intention was only to use the property for a time during which a definite end was to be accomplished, to-wit, the performance of a contract, which might be prolonged more or less by the exigencies of the weather or the like. Under such circumstances no *situs* would be established here. *Peop'es v. Commissioners of Taxation,* 59 N. Y. 40; *Pac. Mail Co. v. Board of Supervisors,* 50 Cal. 283; *Parker Mills v. Commissioners of Taxation,* 23 N. Y. 242–245.

WM. S. ANDERSON, *contra.*—All property brought into this State after the first day of January, and before the tax assessor has completed his assessment is subject to taxation under section 458 of the Code. The legal fiction that personal property follows the person of the owner has no application to questions of revenue.—*Redmond v. Commissioners,* 87 N. C. 122; Burroughs on Taxation, 47; *St. Louis County Court v. Taylor's Admr.,* 47 Mo. 594; *Alvany v. Powell,* 2 Jones' Eq. 51.

The liability of personal property to taxation is determinate by its actual *situs,* and not by the domicil of the owner.—*Mayor, &c., of Mobile v. Baldwin,* 57 Ala. 61; *Trammell v. Connor,* 91 Ala. 398. When personal property is employed within the State for an indefinite period, and not here temporarily, it is subject to taxation.—*Battle v. Corporation of Mobile,* 9 Ala. 238; *St. Louis v. Ferry Co.,* 11 Wall. 431; *Transportation Co. v. Wheeling,* 99 U. S. 279; *City of Albany v. Meeken,* 3 Ind. 481; *Wilkey v. City of Pekin,* 19 Ill. 160.

McCLELLAN, J.—The question presented on this record is whether certain property of the National Dredging Company had a *situs* in this State for the purposes of taxation when the assessment complained of was made in the Spring of 1891. The property was brought into the State after January 1st of that year and before the assessor had completed his assessment, and hence was properly assessed if taxable at all in this State under the agreed facts.—Code, § 458. Those facts are: The National Dredging Company is a Delaware corporation, domiciled at Wilmington in that

State.   As its name indicates, its business or a part of its business, is the operation "of machines, steam tugs, lighters, machinery and appliances for the improvement of rivers, harbors, channels, docks, water courses, low lands," &c. In the Fall or early Winter of 1890 it entered into a contract with the United States for continuing the work of dredging the channel of Mobile Bay, entered upon the execution thereof early in 1891, and from that time on down to the time of the trial of this cause in the City Court, July 30, 1892, has been and was at said last mentioned date still engaged therein.   The property found subject to taxation, to-wit, one dredge boat, "Forbes," one tug boat, "Curtis," and five mud scows, was brought into this State when the performance of the contract was entered upon, that is, in January or February, 1891, and had remained here up to the trial, except some portion thereof, not specified, which was removed to the State of Maine in March or February, 1892.   The contract with the Government had not been completed on July 30, 1892, but its completion would "occur shortly" thereafter, and after such completion the company would have no further use for this property in Alabama. The said tug boat, dredge and scows were floating property, capable of being moved from port to port—the tug of its own motive power, and the dredge and scows by being towed; and the tug "Curtis" is registered in the custom house at Wilmington, Delaware.   It is clear from the foregoing epitome of the facts that all of this property was at the time of the assessment being used in the State of Alabama in the prosecution of works wholly within the State, under a contract which involved its presence here in that work for a time, the duration of which was indefinite, but which extended beyond a year and a half, and the end of which, even from the standpoint of the latter date, could not be more definitely fixed than as "shortly to occur." During all this time and possibly to the present moment the property has been wholly within Alabama; engaged in a business or being used in a work which did not involve its passing even temporarily beyond the limits of the State. Moreover, it has all along been used and possibly is even now being used in the prosecution of this work precisely as property belonging to citizens of this State would be used therein.   Indeed, as appears from this record, other property of the same kind, which had previously been used by residents of Alabama in the prosecution of this work, was purchased by the appellant company, and, being incorporated with that involved here, has all along been used like it in

30

dredging the channel of Mobile Bay, and one scow so used was built in the city of Mobile, and has never been, we assume, outside of the State.   Again, not only is the period of the contract in the execution of which this property is kept in the State indefinite, and hence the duration of its presence here in the execution of that contract uncertain, but it is manifest from the agreed facts that this contract is only one of a series for the dredging of the channel in Mobile Bay, covering years before and after the year 1891. This work was in the line of the dredging corporation's business, it had secured this contract under one annual congressional appropriation when it had to bring its machinery and appliances—this property—to Mobile for its execution.   Having it there, and being thus in a more advantageous position for entering into another contract or other successive contracts as appropriations are made by Congress, it is fair to assume that the National Dredging Company will enter into other contracts, or rather, at least, that its purpose and intention is to do so if favorable terms can be made.   These considerations are proper in arriving at the *situs* of this property.   They go to show, by reference to the owner's intention as fairly inferable from all the circumstances, an indefiniteness as to the period of the presence of these boats and scows wholly within Alabama beyond that existing as to the duration of the first contract, and the use of the property here in performance thereof.   In other words, taking into consideration the business of the corporation, the amount and continuing character of the work to be done in Mobile Bay, the preparations made by the company for doing so much thereof as is authorized under one annual appropriation, it may be that this property will be for years engaged upon this work, as a part of that now being used by the company of like kind with this had been used thereon for a year or years prior to 1891.   On this state of the case—or even leaving out of view the considerations last adverted to—it is clear, we think, that this property is not merely temporarily within Alabama, but that, to the contrary, its presence here is for such an indefinite period as involves the idea of permanency, in the sense in which that term is used with respect to the *situs* of property for the purposes of taxation.   It is here as any other property is or would be here in use upon the public works in Mobile Bay.   Its use in that work is the same as that of the other property originally embraced in this assessment and formerly owned by a citizen of Alabama and by him devoted to this work during previous years, the same as that of the scow

which was built in Mobile for this work and has never been beyond the State, and the same as that of another scow built outside of the State for this work. All this other property is property of the State or in the State for the purposes of taxation, though it may at some uncertain future time cease to be property taxable here in consequence of its removal to other jurisdictions, as the property in controversy may sometime be carried out of the State. Until that happens, however, both classes of property enjoy the same protection of our laws, both classes are devoted to the same use, the continuation of each class within the State is alike indefinite; the one class can not, in short, be distinguished from the other in any characteristic which is of importance in determining the question of taxability *vel non.* And hence our conclusion that the property in controversy had become so incorporated with, and a part of, the tangible property of this State, for revenue purposes, as that its taxable *situs* is here, notwithstanding the fact that the domicil of its owner is in another State.—*Mayor of Mobile v. Baldwin,* 57 Ala. 61; *Boyd v. City of Selma,* 96 Ala. 144; 11 So. Rep. 393; Burroughs on Taxation, pp. 40-1; *Trammell v. Connor,* 91 Ala. 398.

There is nothing in the nature of this particular property to take it out of the general principle. The fact that it is floating property and may be moved from place to place and port to port by water furnishes no more reason for exempting it from taxation here than would exist for the exemption of property which did not float and could be moved from place to place only overland.

With respect to the tug boat Curtis, a special consideration is advanced in support of its non-taxability. It is a sea-going vessel, propelled by steam, and is entitled to registry under statutes of the United States at the port of its owner's domicil. As matter of fact, it is registered at the custom house in the City of Wilmington, Delaware. On this the contention is that that being home, it can not be taxed elsewhere. There are many cases which hold that such vessel, engaged in commerce between its home port and others, or even wholly between other ports than that of its registry, can be taxed only at the port of registry. It is not our purpose to question these decisions; it is not necessary that we should. They all proceed upon the theory that vessels thus engaged are never in foreign jurisdiction except *temporarily,* and as an incident to the commerce to which they are devoted, and hence that they do not and can not acquire a *situs* in foreign ports for the purposes of taxation: they do not become incorporated with the property of

other States and countries which they touch intermittently, are never indefinitely there, and their business, the work they perform, the uses to which they are put, is not done and performed within, and are not local to, the foreign State or country. These considerations can have no application here. The tug Curtis is not engaged in commerce, foreign or inter-state. Its business is wholly within Alabama. It is not here temporarily, but indefinitely. It is as much a part of the property of the State for taxation as if it had been chartered for an indefinite period of time to carry freight and passengers, or tow ships over the waters of Mobile Bay between the city and Point Clear, or as if its owner had devoted it to the carrying trade of the Alabama River; and surely in these cases it could not be successfully insisted that it was not as much Alabama property for taxation as any other boat devoted exclusively to the navigation of the water courses of the State. The question, indeed, is at last one of *situs* in fact, and where this is shown neither foreign registry nor foreign ownership is of any consequence.

The judgment of the City Court is affirmed.