J. E. JOHNSON, COLLECTOR, APPELLANT, VS. DEBARY-BAYA MERCHANTS' LINE, APPELLEE.

1. The domicile of a vessel duly registered under the acts of Congress regulating the registry of vessels and record of bills of sale and mortgages affecting the same, is the port where the vessel is registered, and which must be the nearest to the place where the owner or owners reside.

2. A vessel duly registered in the port to which she properly belongs is primarily and presumptively taxable at that port only; and where it is conceded on the record that vessels owned by a non-resident corporation duly registered at the home port of such corporation in full compliance with the acts of Congress regulating the registry of vessels and regularly returned for assessment and taxation at their home port, are employed in commerce in the waters of this State where the most profitable employment for the vessels was offered, and such employment was in pursuance of the usual course of dealing with said vessels to send them wherever the most profitable service could be secured, they are not so permanent in this State as to become incorporated into the personal property here and subject to taxation in this jurisdiction. Only the State in which the home port is situated has dominion over the vessels, under such circumstances, for the purposes of taxation.

3. *Held*, On the facts of this case, a court of equity had jurisdiction to enjoin a sale of a vessel seized for taxes claimed to be due, as the threatened injury is shown to be of an irreparable nature, not within the principle decided in *Baldwin vs. Tucker*, 16 *Fla.* 258, and *Odlin vs. Woodruff*, 31 *Fla.* 160, 12 *South. Rep.* 227. (LIDDON, J. *dissenting*).

Appeal from the Circuit Court for Duval county.

STATEMENT.

A bill was filed by appellee to enjoin appellant, collector of revenue of Duval county, from seizing a steamboat for taxes claimed to be due the State and county. The substantial allegations of the bill set out in paragraph are as follows:

1. Complainant was a corporate body, organized and existing under the laws of the State of New York, and had been such corporate body since 1883, and from that time to the filing of the bill had its headquarters and chief office in the city and State of New York.

2. Complainant had at different times during its corporate existence been the owner of the following barges and steamboats, viz: the City of Jacksonville, Anita, Rosa, Welaka, Oscar Wilde, Geo. M. Bird, Fannie Dugan and Fred. DeBary; and at the time of filing the bill was the owner of the city of Jacksonville, Fred. DeBary, Welaka and Everglade.

3. The home port of the several boats named was the city of New York, and they were duly registered in the custom house in the city of New York and State of New York.

4. That for a period of time anterior to the filing of the bill complainant sent to the waters of the St. Johns river said boats and maintained a line of steamers between Jacksonville and Sanford in this State for a part of each year, and for some years for the entire year, carrying freight and passengers and doing the usual traffic business incident to steamboats plying upon a river.

5. That the Fred. DeBary had at different periods of time since and inclusive of the year 1883 plied upon waters in the States of Florida, New York, Massachusetts and Connecticut, wherever a profitable charter could be obtained, it being the practice and custom of complainant to send its said boats at different times to such waters as they could be most profitably engaged upon.

6. That since the 15th of November, 1889, the steamers Everglade, Welaka, Fred. DeBary, and City of Jacksonville (except the last two having during the summer and part of the fall months plied upon the waters of the States of New York and Massachusetts) formed the connection with the steamships of the Clyde Steamship Company, a corporation under the laws of Delaware, plying between the city of New York and Jacksonville, Florida, and taking the freight of said steamers shipped from New York and Charleston to points on the St. Johns river in Florida to Sanford, and thereby forming and becoming an integral part of an all water route between New York and Jacksonville and Sanford in Florida; that three of the steamships of the Clyde line, of large carriage capacity, arrived each week with freight from New York and Charleston for points on the St. Johns river, and which complainant's steamers were engaged in distributing to consignees, and there was no other service capable of properly and expeditiously handling said freight except the boats of complainant.

7. That the steamers City of Jacksonville and Fred. DeBary had been taken to the waters of the States of New York and Massachusetts, there they were then navigated in the passenger and carriage business, in pursuance of the plan adopted and carried out by complainant and followed under the arrangement by which the boats were then navigated in connection with the Clyde Steamship Company.

7a. That the steamboats being owned in New York, had not become so blended with the commerce and business of the State of Florida as to make them taxable in this State, and the status and condition of said boats, obtained by reason of their non-resident owner-

ship and of their registry in the custom house in the city of New York under the act of Congress, had not been affected or changed.

8. That the steamer Geo. M. Bird was not worth $1,000, and in the year 188– became so worthless that she was dismantled and abandoned as wholly worthless and useless, and had not been used since that date. That the Fannie Dugan was not worth $2,000, and she was burned and totally destroyed in the summer of 1887. That the Anita was burned in the summer of 1889 in Boston, Massachusetts. The Oscar Wilde was of little value, and was sold in 1888 for $700; and the Rosa was sold in the summer of 1889.

9. That all of said boats, by reason of the wear and tear in the usual course of usage had depreciated from year to year, and such deprecition is an important factor in the consideration of steamboat property.

10. That complainant is informed that taxes of every kind on vessels are payable in their home port, and that the home port is the name of the port required by the act of Congress to be painted on the stern of the vessel upon a black ground in white letters, and in compliance with the act of congress the name of each of the said vessels had been painted on its stern upon a black ground in white letters, and the name of the City of New York and State of New York given as the home port of said vessels; that acting under the law as so fixed the tax on all of the said vessels from the year 1883 to and including the year 1890, had been paid to the State, county and city of New York.

11. That complainant had regularly returned the valuation of its property, including the said vessels, to the proper authorities of the State, county and city of New York, and had regularly submitted all infor-

mation required by said authorities for the purpose of enabling the said authorities to assess and collect the taxes against it.

12. All of said boats were and are of more than twenty tons burden.

13. That the tax assessor of Duval county, Florida, in violation of the Constitution of the United States and of the act of Congress regulating commerce and the assessment of taxes on steamboats, had assessed a tax against all of said boats claimed to be due for the State of Florida and county of Duval.

14. That said tax was not assessed to or against complainant, but was illegally assessed against the property itself as follows:

For the year 1883, Steamers of DeBary-Baya Line: City of Jacksonville, Fred. DeBary, Anita, Rosa, Geo. M. Bird, Welaka; Barge, Oscar Wilde.

For 1884, Steamers of DeBary-Baya Line: City of Jacksonville, Anita, Rosa, Geo. M. Bird, Welaka; Barge, Oscar Wilde.

For 1885, Steamers of DeBary-Baya Line and owners: City of Jacksonville, Fannie Dugan, Anita, Rosa, Geo. M. Bird, Welaka, Fred. DeBary; Barge, Oscar Wilde.

For 1886, DeBary-Baya Line and owners: City of Jacksonville, Fannie Dugan, Anita, Rosa, G. M. Bird, Welaka, Fred. DeBary; Barge, Oscar Wilde.

For 1887, Steamers of DeBary-Baya Line and owners: City of Jacksonville, Anita, Rosa, Geo. M. Bird, Welaka, Fred. DeBary; Barge, Oscar Wilde.

For 1888, Steamers of DeBary-Baya Line: City of Jacksonville, Anita, Rosa, Geo. M. Bird, Welaka; Barge, Oscar Wilde.

For 1889, Steamers DeBary Line: City of Jacksonville, Anita, Rosa, Welaka, Oscar Wilde.

For 1890: Steamer City of Jacksonville and owner.

15. That during the periods of time for which said assessments were made complainant was not the owner of the Oscar Wilde, Geo. M. Bird, Fannie Dugan, Anita and Rosa; two having been sold, two burned and one destroyed by natural decadence, and since the year 1887 the Anita and others of said steamboats were not in the waters of the State of Florida, nor in any of its ports at any time during said year.

16. That said tax assessment was void because said boats were not taxable, under the facts stated, in the State of Florida, but only in the State of New York.

17. That said assessment was illegal and void because the property was not assessed to the owner.

17a. That said tax demand was inequitable and unconscionable because the taxes on the same property for the same periods had been paid to the State and county of New York.

17b. Said tax was void because said taxes were assessed on property after it was destroyed, and after it had ceased to be owned by complainant, and on other property after it had ceased to come into the waters of the State of Florida.

18. That as to the tax on the several boats for the several years claimed to have accrued to the State of Florida and county of Duval, no notice was given to complainant, and no notice was had until it served upon one J. A. Leslie, who acted for the Clyde Steamship Company as its agent at Jacksonville in its management of the line from New York to Jacksonville and Sanford, and then said notice was served for all the years from 1883 to 1890 inclusive.

19. That Johnson, tax collector for Duval county, had seized the Steamer Welaka for the payment of all of said taxes on all of said boats from 1883 to 1890 inclusive, and said collector was in the act of advertising said boat for sale for the payment of said taxes, in violation of the Constitution of the United States and the act of Congress passed in pursuance thereof, and contrary to the Constitution and laws of the State of Florida.

20. That the boat levied upon is peculiarly adapted to the business in which it was being operated, and if sold could not be replaced to complainant without great delay and injury, and all of said boats under the management as before mentioned were necessary to transport the freight of the said New York steamers and the shippage of any one for one trip only would prevent the compliance with engagements for said boats, and be of great detriment to complainant and the public. That the withholding of said boat was in violation of complainant's rights, and if continued would work a great wrong and irreparable injury; that if the custody of said boat should continue with said collector, or it should be sold, all the damage and injury mentioned would be brought upon the complainant; that the said collector of revenue, as complainant was informed, was not pecuniary able to respond to such damages as would ensure to complainant even if such damages were capable of ascertainment, and that the bond of said collector does not cover damages of such character.

21. That if the boat levied upon, or any of said boats should be levied on, and sold for said taxes, great sacrifice and loss would result to complainant, and the withdrawal of said boat, or any of said boats

from active service in the business in which they were employed, would cause serious embarrassment and paralysis to complainant's said business; that great delay and injury would accrue before said boat or boats, if sold, could be replaced, and that it would be very difficult, if not impossible, to ascertain, with even approximate certainty, the loss and damage that would result to complainant. That even if said collector should be pecuniary able to respond in damages, should it be determined that his said seizure was illegal, a verdict against him would not compensate or adequately redress the wrongs and injury to complainant, as its damage resulting from such acts of said collector was incapable of being properly and equitably assessed by a jury as the profits that might inure to complainant would be large, and of a character not measurable in a court of law. That the act of the said collector in seizing said vessel prevented complainant from exercising its franchise involving a public duty of operating said boats in the carrying trade, and if said boat should be sold or long withheld in the custody of said collector, it would be prevented from performing its usual service, and of which the public had notice, and upon which business engagements had been based, and it would destroy the integrity of the line and produce irreparable injury to complainant.

22. That said defendant ought to be restrained from levying upon any of said boats, or any of the property of complainant, for said taxes.

The bill contains the usual prayers in bills for injunction. A temporary injunction was granted upon the execution of the bond required. A demurrer to the bill was overruled, but no exception is taken here

to the ruling.   An answer was filed in which the first six paragraphs of the bill are admitted to be true.   The seventh paragraph is admitted to be true, but it is alleged that the boats therein mentioned had returned to the State of Florida to resume their business since the filing of the bill.   The eighth and ninth paragraphs are admitted to be true.   The following statement in the tenth paragraph is denied, viz:   That acting upon the law as stated, the tax on all the vessels mentioned from 1883 to 1890 inclusive had been paid to the New York authorities as alleged, and it is stated that such taxes had not been paid.   The allegations of the eleventh and twelfth paragraphs are admitted.   Denial is made of the statement in the thirteenth paragraph to the effect that the assessor of Duval county had assessed a tax on all of said boats for the State of Florida and county of Duval in violation of the Constitution of the United States and the act of Congress regulating commerce and the assessment of taxes on steamboats.   The statement in the sixteenth paragraph, that the assessment was void because said boats were not taxable, under the facts stated, in the State of Florida, but only in New York is denied.   The statement in the seventeenth paragraph, that the taxes demanded were inequitable and unconscionable is denied.   The eighteenth paragraph is admitted to be true.   The seizure of the boat Welaka, and the purpose to sell her for said taxes are admitted.   It is denied that the withholding of said boat from complainant was a violation of its rights as alleged in the twentieth paragraph, but the other statements of this paragraph may be true.   The allegations of the twenty-first paragraph are conceded to be true; but the statement in the twenty-second paragraph, that defendant

ought to be enjoined from seizing and selling the boats or other property of complainant for said taxes is denied. Exceptions to the answer in failing to sufficiently reply to the tenth, eleventh and fifteenth paragraphs of the bill were sustained.

An entire amended answer to the bill was filed and the substance of the amended answer after being itself amended in part, and upon which the case was disposed of is as follows:

1. It is admitted that complainant was a corporatio n as alleged, but defendant had no information other than that furnished by the bill as to its headquarters or chief office, and it is insisted that the allegation as to such matters was not applicable to the issues when taken in connection with the other statements of the bill.

2. The allegations in the second paragraph of the bill are true.

3. The allegations of the third paragraph, that the home port of the several boats named was in New York, were inconsistent with the statements in the fourth paragraph.

4. The statements in the fourth paragraph are true.

5. The statements in the fifth paragraph as to the steamer Fred. DeBary plying in the waters of the State of Florida are admitted, and it is submitted that the other allegations of this paragraph are irrelevant.

6. That the statements in the sixth paragraph might be true, but defendant could not further answer, as he had no other information other than that furnished by the bill, but it was not sufficient in the particulars mentioned to release complainant from the assessment in question.

7. That defendant had no sufficient information on which to form a belief as to the truth of the seventh paragraph, and submits that the same does not show any avoidance of the liability of complainant to pay the taxes assessed against it and its property.

8. Further answering defendant denied the right of complainant at that date to question the value of the property as shown by the assessment, it having neglected and refused to make a return of the values of said property to the proper authorities.

9. That the tenth paragraph was purely an argument, and could not be answered.

10. That nothing contained in the eleventh paragraph, if true, would relieve complainant from paying said taxes.

11. The allegation in the thirteenth paragraph, that the said assessment was contrary to law, is alleged to be untrue in point of fact.

12. To the fourteenth paragraph it is alleged that the assessments made for the years 1885, 1886, 1887 and 1890 against the boats as mentioned in said paragraph, and the owners of said property, and for the years 1883, 1884, 1888 and 1889, as stated, was made against the property of the DeBary-Baya Merchants Line; that the revenue laws of this State, by virtue of which said assessments were made, impose the duty upon the assessor to ascertain by diligent inquiry the names of all persons in his county subject to taxation, and also all their taxable personal property, and to make out an assessment roll of such taxable property, and for this purpose to attend the various precincts in the county to receive assessments; that the assessor for Duval county attended in the city of Jacksonville at his principal office to receive returns, and used due

diligence to ascertain the names of all taxable persons and property in said county, and made out an assessment roll in accordance with information then and there received. That complainant was a foreign corporation and had then no record of its name and permanent residence in Florida, whereby said assessor could obtain the necessary information to make the assessment, and it was not made his legal duty to go outside of Duval county to ascertain the names of the owners of property situated therein, unless the owner was a resident of the county; that it was the duty of complainant, being a resident of New York, with its chief office there, and having its boats in the waters of the St. Johns river in this State, to make return under oath to the assessor of all the facts necessary to make a technical assessment, but it made no such return during the periods stated, and it should not now be heard to complain that the assessment did not state the name of the corporation technically correct, or that the valuation of the property is too great.

13. That the statements in the fifteenth paragraph are too uncertain and indefinite to be answered.

14. That the other parts of the bill raise questions of law, and should not be answered.

The case was heard upon bill and answer and the injunction made perpetual, from which decision an appeal was entered by the defendant.

*W. B. Lamar, Attorney-General*, for Appellant.

*John E. Hartridge, Bisbee & Rinehart*, for Appellee.

·MABRY, C. J.:

The bill in this case is prolix, and not as precise as it might have been. After exceptions were sustained to parts of the first answer interposed, an amended answer was filed to the entire bill, and the first one might be considered as abandoned and entirely out of the case. As the case was disposed of on the pleadings, and our conclusion is the same whether the second answer as amended be considered alone, or in connection with the first one, we have filed herewith a full statement of the entire pleadings in the case. From an examination of this statement it will be found that the following facts may be conceded to be true, *viz:* Appellee was a corporation existing under the laws of New York, with its headquarters and chief office in the city and State of New York, and since the year 1883 to the filing of the bill in August, 1891, had been the owner of certain named vessels of over twenty tons burden, and at the time of filing the bill owned four of the vessels; that all of said vessels were duly registered in the custom house in the city of New York and State of New York, and said city was their home port; that in compliance with the act of Congress, the name of each vessel had been painted on its stern upon a black ground in white letters, and the name of the city of New York and State of New York given as the home port; that appellee had regularly returned the valuation of its property, including said vessels, to the proper authorities of the State, county and city of New York, and had regularly submitted all information required by said authorities to enable them to assess and collect the taxes against said property. The statement in the tenth paragraph of the bill, that ap-

pellee had in fact paid taxes on said vessels to the New York authorities since the year 1883, was denied in the original answer, but the amended answer states that said paragraph was purely an argument and could not be answered. It is also conceded that for a period of time anterior to the filing of the bill, appellee sent said boats to the St. Johns river in this State and maintained a line of steamers between Jacksonville and Sanford for a part of each year, and for some years for the entire year, and engaged them in the usual traffic business incident to steamboats plying upon a river. The original answer admits the statements in the fifth paragraph of the bill, and the amended answer, after admitting that the steamer Fred. DeBary plied in the waters of this State as alleged, submits that the other averments therein were irrelevant. From the admissions made in this respect it appears that it was the custom and practice of appellee to send its boats at different times to such waters as afforded profitable engagements. From the allegations in the sixth paragraph of the bill, not denied, it is conceded that since the 15th of November, 1889, four of the boats mentioned, except two during the summer and part of the fall months, when they were upon waters in other States, formed a connection with a foreign corporation engaged in interstate commerce, and constituted an integral part of an all water route between New York and Jacksonville and Sanford in this State. It is also conceded that prior to November, 1889, the other boats of appellee were destroyed by fire, or worn out and abandoned.

Two of the boats owned by appellee at the time of filing the bill had been sent to waters of other States to engage in business, but, as alleged by the original

answer, they had returned after the filing of the bill to engage in business in Florida waters. There is no denial of the allegations in paragraph 7a, that the boats being owned in New York, had not become so blended with the commerce and business of the State of Florida as to make them taxable in this State, and that their status, obtained by reason of their non-resident ownership and registry in the New York custom house, under the act of Congress, had not been changed. The answer denies, however, that appellant seized the boat in question for the alleged taxes in violation of the laws of the United States, or of the State of Florida.

In the case of Minturn vs. Hays, 2 Cal. 590, S. C. 56 Am. Dec. 366, decided in 1852, it appeared that a steamboat built in New York by owners resident there was employed from June, 1850, to the time of the suit in carrying passengers and freight between Sacremento City and San Francisco, in California. It was alleged that the owners of the boat paid taxes on her in the State of New York, but there was no showing as to her registry anywhere. The California court held that the boat was subject to taxation in that jurisdiction. The Alabama court, in the case of Battle vs. Mobile, 9 Ala. 234, S. C. 44 Am. Dec. 438, held a vessel subject to taxation by the city authorities of Mobile under the following conditions: A resident citizen of the State of Pennsylvania owned an interest in several steamboats that ran on rivers in the State of Alabama, and the boats were regularly licensed under the laws of the United States, and registered at the custom house in the city of Mobile in pursuance of the act of Congress. The city of Mobile in pursuance of an act of the Leg-

33

islature assessed taxes on said vessels for the current year 1844–5, and the boats had, since the first day of December, 1844, and until the assessment, regularly plied on the Alabama river between Mobile and Montgomery, carrying freight and passengers, and they were in the city of Mobile when the assessment was made. It also appeared that the non-resident owner paid taxes on his interest in the boats in Pennsylvania, and that they returned to that State after the boating season was over in Alabama, and plied on the Ohio and Mississippi rivers. The non-resident in this case had only an interest in the boats, and they were duly registered in the port of Mobile. In Mayor vs. Baldwin, 57 Ala. 61, it was determined that a ferry-boat plying daily between the eastern shore of Mobile bay and the city of Mobile, and returning each night to the eastern shore where the owner resided, and from which it commenced its daily trips, was not liable to taxation by the corporate authorities of the city. While announcing the rule that the non-residence of the owner of a vessel *prima facie* relieved it of taxation, it was held that actual citus, and not the domicile of the owner was the material inquiry in ascertaining the liability of personal property to taxation. The right to tax in this case arose under a statute giving the city of Mobile the authority to tax itinerant or transient vessels remaining in the corporation less than one year. In the case of National Dredging Co. vs. State, 99 Ala. 462, 12 South. Rep. 720, the same rule was announced as in Mayor vs. Baldwin. The business of the National Dredging Co. was the operation of machines and appliances for the improvement of rivers, harbors, channels, docks, water courses, low lands, etc., and in the fall or early winter of 1890 the company entered

into a contract with the United States for continuing the work of dredging the channel of Mobile bay and entered upon the execution thereof early in 1891. After the first day of January, 1891, and before the county assessor had completed his assessment, the company brought into the State certain property, including a dredge-boat, a tug-boat and five mud scows, which remained up to July, 1892. The contract with the government had not been completed on the last mentioned date, but would occur shortly thereafter; and after its completion the company would have no further use for the property in Alabama. The tug-boat, dredge and scows were floating property capable of being moved from port to port, and the tug was registered in the custom house at Wilmington, Delaware, the residence of the corporation owner. Some time in May, 1891, the assessor of Mobile county placed upon the tax books the tug, dredges and scows, and the court held that they were subject to taxation. It was said that it was clear "that all of this property was at the time of the assessment being used in the State of Alabama in the prosecution of works wholly within the State, under a contract which involved its presence here in that work for a time, the duration of which was indefinite, but which extended beyond a year and a half, and the end of which, even from the standpoint of the latter date, could not be more definitely fixed than as shortly to occur. During all this time and possibly to the present moment, the property has been wholly within Alabama, engaged in a business or being used in a work which did not involve its passing even temporarily beyond the limits of the State." The court further said that "there are many cases which hold that such vessels (speaking of the registered tug-

boat) engaged in commerce between its home port and others, or even wholly between other ports than that of its registry, can be taxed only at the port of registry.    It is not our purpose to question these decisions; it is not necessary that we should.    They all proceed upon the theory that vessels thus engaged are never in foreign jurisdiction except *temporarily*, and as an incident to the commerce to which they are devoted, and hence  that they do not and can not acquire a situs in foreign ports for the purpose of taxation; they do not become incorporated with the property of other States and counties which they touch intermittently, are never indefinitely there, and  their business, the work they perform, the uses to which they are put, is not done and  performed within, and are not local to, the foreign State or county."    In Hays vs. Pacific Mail Steamship Co., 17 How. 596, after referring to the acts of Congress regulating the registry of vessels and the record of bills of sale, mortgages and conveyances in reference thereto, it was held that the domicile of a vessel was the port at which she is registered, and which must be the nearest to the place where the owner or owners reside.    It was said:    "Whether the vessel, leaving her home port for trade and commerce, visits, in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State, and liable to taxation at one port than at another.    She is within the jurisdiction of all or any one of them temporarily, and for a purpose wholly excluding the idea of permanently abiding in the State or changing her home port.    Our mer

chant vessels are not unfrequently absent for years, in the foreign carrying trade, seeking cargo, carrying and unloading it from port to port, during all the time absent, but they neither lose their national character nor their home port, as inscribed upon their stern." The facts in the case of Morgan vs. Parham, 16 Wall. 471, were, that a resident citizen of New York, owning a vessel duly registered in the port of New York, with her name and port painted upon her stern, as required by the act of Congress, sent her in 1865 to ply between the waters of Mobile, Alabama, and New Orleans, Louisiana, and from that time until 1870 she was employed as a coasting steamer between said cities. In January, 1867, the vessel was regularly enrolled at the custom house in Mobile by her master, and her license as a coasting vessel was renewed in the years 1868 and 1869. During this term the captain of the vessel had been a resident of Mobile, and the agent conducting the business of the vessel occupied an office here, but was under a superior agent residing in New Orleans who paid the captain and other officers of the vessel. A wharf and office in Mobile were occupied for the use of the vessel. She was engaged with other vessels in transporting mails, freight and passengers between Mobile and New Orleans, and the business was extensive and profitable. The vessel was assessed in 1866 and 1867 as personal property in the city of Mobile, belonging to the non-resident, and the taxes remaining unpaid the boat was seized by the collector of the city of Mobile. The court held that the vessel was not subject to taxation in Mobile, and was only liable in New York, her home port. A distinction was made between the enrollment and registration of a vessel, and the enrollment of the boat in question in the port

of Mobile did not indicate a change of her domicile. It was stated by the court that the physical presence of the vessel in Mobile when the taxes were assessed did not decide the question, and that the vessel being owned by and employed in the service of a resident of New York, was primarily and presumptively taxable under the authority of that State and of that State only. The view announced in Hays vs. Pacific Mail Steamship Co., *supra*, was approved, and it was said it was not important whether the owner in fact paid taxes on the vessel in New York during the years for which she was taxed in Alabama. Federal jurisdiction over the case was also asserted. The decisions in St. Louis vs. Ferry Co., 11 Wall. 423, and Transportation Co. vs. Wheeling, 99 U. S. 273, are not opposed to the Federal decisions to which reference has been made. Undoubtedly the vessels of appellee were subject to taxation in New York under the decisions of that State. People *ex rel.* Pacific Mail Steamship Co. vs. Commissioners of Taxes, 58 N. Y. 242. It is here held that the situs of a sea-going vessel for the purpose of taxation is the port where she is registered under the laws of the United States as her home port, and that such situs was not lost by mere absence and employment elsewhere, but continues until a new one is acquired. In Roberts vs. Township of Charlevoix, 60 Mich. 197, 26 N. W. Rep. 878, it was held that a vessel registered under the United States navigation laws, and owned by a non-resident of Michigan, was not subject to the taxing power of that State by reason of engaging in business therein. Judge Campbell speaking for the court, after stating the doctrine of the Federal courts, that a registered vessel under the United States navigation laws does not, by engaging

in business within a State, become subject to its tax-
ing power, if the owner be a non-resident, dismisses
the subject with the statement that "this doctrine hav-
ing been settled by the court of last resort, there would
be no propriety in discussing it." Under the admitted
facts of this case we are of the opinion that the vessels
of appellee were not subject to taxation in Duval county.
The vessels were owned by a New York corporation,
and had acquired a situs in that State by being duly
registered in the port of New York, the nearest to the
residence of the owner, and were engaged in commerce
in that State where, it is conceded the most profitable
employment could be procured for them. The mere
fact of being employed in interstate commerce, would
not exempt them from taxation, and we do not say
that registration in a foreign port and non-resident
ownership should control absolutely, but such owner-
ship and registration render them primarily and pre-
sumptively taxable only in their home port. This is
clearly the doctrine of the Supreme Court of the United
States—the court of last resort in such a case. The
boats of the non-resident corporation were used in the
very business for which they were constructed, and
they were in Florida waters because they could be more
profitably employed here. Some of them were trans-
ferred to other fields as profit dictated, and it does not
appear that they all might not have been taken away
at any time if it had been to the interest of the owner
to move them.

It appears that several of the boats had been de-
stroyed during the periods for which taxes were as-
sessed or attempted to be assessed on them, but under
the rule announced in the Federal court, all of them,
on the conceded facts, were primarily and presump-

tively taxable only in New York. If it be conceded, under the allegation of the first answer, that the taxes on the boats had not been paid in New York, they were assessed there, and were only liable to be taxed in that jurisdiction. The answer does not even directly deny the allegation that the boats had not become so blended with the property of this State as to become subject to taxation in our jurisdiction. All property should in justice pay its proportionate part of tax burdens in return for protection given; but one State should not lay taxes upon citizens of other States, unless their property has acquired a situs in the taxing locality so as to become a part of the property there situated. If every State into which vessels entered in their regular employment laid taxes upon them, such property would be subject to more than double taxation. The character of such property is such as to give rise to the just rule under the United States registry acts, that it is primarily taxable only at the home port where the owner resides.

The only other point to which reference need be made is the jurisdiction of the court to enjoin the sale of the boat seized. On the allegations of the bill we are of the opinion that the court did have jurisdiction. The threatened injury was of such a nature as to render it irreparable, and the case does not come within the principle of the decisions of Odlin vs. Woodruff, 31 Fla. 160, 12 South. Rep. 227, and Baldwin vs. Tucker, 16 Fla. 258.

The decree of the chancellor should be affirmed, and it is so ordered.

LIDDON, J., (*dissenting*):

I can not agree with the opinion of the court in this case, for the following reasons: I think some of the boats of the appellee are subject to the taxes, or some of such taxes, as are sought to be collected. The bill alleges that the boats in question "had not become so blended with the commerce and business of the State of Florida as to make them taxable in this State, and the status and condition of said boats, obtained by reason of their non-resident ownership, and of their registry in the custom house of the city of New York under the act of Congress, had not been affected or changed." This allegation is not specifically denied. In view of the fact that the general tone and tenor of the answer is a denial to the exemption from taxation by reason of the matters of fact alleged by the bill, I do not think it necessary that there should have been such specific denial of these very allegations. The allegations themselves are not averments of fact, but of opinion from the statement of facts which preceded them.

The bill was filed August 12th, 1891. It appears from the sixth paragraph of the same that four of the complainant's steamers, *viz:* the Everglade, Welaka, Fred. DeBary and City of Jacksonville, except the two latter during the summer months and part of the fall months, had from the 15th of November, 1889, formed part of an all water route, in connection with other steamers touching at Jacksonville from the City of New York, to Sanford, Florida. These steamers of complainant being engaged in plying only between Jacksonville and Sanford in this State, and upon waters of the St. Johns river, situated wholly within

the same. Taken in connection with the fourth paragraph it shows that these steamers not only received and carried the freights brought from New York by the connecting line, but were engaged in "carrying freight and passengers, and doing the usual traffic business incident to steamboats plying upon a river." No limit of time is stated within which this business is to continue. Therefore the presumption is, that it is to continue indefinitely. Under this showing I think the steamers Welaka and Everglade appears to be permanently engaged in business, and plying waters located wholly within this State, and that they are here taxable. I think my conclusion is in accordance with the weight of authority. The authorities appear to be in conflict with each other, but I think this conflict more apparent than real. The general principle settled by the decisions of the Federal courts is that vessels registered according to the provisions of the act of Congress are taxable only in the port of registration, which is called the home port. In all such cases, however, the tax which has been declared illegal was sought to be imposed upon vessels engaged in commerce between ports of different States, or foreign countries, or where it was only temporarily *in transitu* in the taxing district for the purpose of discharging and receiving passengers and freight. In no case that I have seen has the United States Supreme Court declared such a tax illegal when imposed by a State upon a vessel permanently engaged in plying waters located wholly within such State. Hurridly reviewing some of these cases, it will be seen that in St. Louis vs. The Ferry Company, 11 Wall. 423, the tax which was declared illegal was assessed upon ferry boats running from East St. Louis, Illinois, across the Missis-

sippi river to St. Louis, Missouri. The company own-
ing them was an Illinois corporation, but its principal
officers resided in St. Louis, Missouri, and most of the
corporation's business was transacted there. The
boats when not in use were kept on the Illinois side
where the real estate of the corporation was located,
and where its agents and employes having immediate
charge of the boats resided. An ordinance of St.
Louis forbade them to remain longer than ten minutes
at a time in that city. They were attempted to be
taxed as property "within the city." The court held
that the ferry boats were not property within the city
and liable to taxation as such. This case overrules a
similar case between the same parties, 40 Mo. 580. A
case so similar to that of St. Louis vs. The Ferry
Company as to need no further statement of the facts
is State vs. Haight, 30 N. J. L. 428. Transportation
Company vs. Wheeling, 99 U. S. 273, only settles that
a steamboat engaged in interstate commerce may be
taxed at the home port. In City of New Albany vs.
Meekin, 3 Ind. 481, S. C. 56 Am. Dec. 522, a tax was
assessed upon a part interest owned by a resident of
that city in a steamboat engaged in plying between
ports of different States which, in the course of its
business, touched occasionally at New Albany. The
point decided was, that the property was not "within
the city, so as to be liable to such taxation. A very
similar case is Wilkey vs. City of Pekin, 19 Ill. 160.
In Morgan vs. Parkham, 16 Wall. 471, the vessel upon
which the tax was claimed was owned and registered
in New York. It was, however, enrolled and had a
coasting license at Mobile, Alabama. It plied between
Mobile, Alabama, and New Orleans, Louisiana, mak-
ing tri-weekly trips, the court held that it was not sub-

ject to the tax, and draws a distinction between the registration and the enrollment of a vessel. The enrollment at Mobile, the court held, showed that it was only temporarily at that port. In Hays vs. Pacific Mail Steamship Co., 17 How 596, the vessel was an ocean steamer plying between San Francisco, Panama and ports in Oregon, remaining in San Francisco no longer than was necessary to load and receive cargo and passengers, and in Benicia only long enough for repairs and supplies. The vessel was owned and registered in New York, and was held not liable for taxation in California. In People *ex rel.* Pacific Mail Steamship Co. vs. Commissioners of Taxes, 58 N. Y. 242. the court held that vessels owned and registered in New York, but which had been sent soon after they were built to the Pacific ocean where they were engaged in commerce, without ever having returned to the home port, were taxable in New York. Nothing more definite as to the location of the vessels is shown than that they were permanently employed upon the waters of the Pacific ocean." In the body of this opinion is some broad general language in which it is stated that the Supreme Court of the United States has held in Hays vs. Pacific Mail Steamship Co., *supra*, and Morgan vs. Parham, *supra*, "with respect to vessels away from their home ports, that the States in which they came or remained in the course of their employment had no authority to impose taxes; that this jurisdiction belonged to the States where their home ports were situated; that their legal *situs* for purposes of taxation was in their home ports, and that this was not lost by mere absence and employment elsewhere." I do not understand the case referred to to support the broad proposition quoted. These

causes as I understand them, set aside the tax assessment for the reason that the vessel was only temporarily within the taxing district. The remarks quoted are merely argumentative, and not essential to the decision of the case. The question before the court was only as to the *situs* for taxation of sea-going vessels registered and owned in the State where the tax was imposed, but which were absent from the State, in the waters of the Pacific ocean. This case affirmed the same case in 1 Hun. 143.

The only case we have found in which the tax was declared invalid, where the facts appear to be similar to those of the case under consideration, is Roberts vs. Township of Charleviox, 60 Mich. 197, 26 N. W. Rep. 878. The statement of facts in this case is very meagre. The vessel was owned by a non-resident of Michigan, and taxes upon it were paid in Dakota where the owner resided. The only allegation as to the length of time the property was in Michigan is, that it was "used at the time in the navigable waters of this State." The court held similar to the holding cited from 58 N. Y., *supra*, that "the decisions of the United States Supreme Court have uniformly held that a vessel enrolled and licensed, or registered, under the United States navigation laws does not by engaging in business within a State become subject to its taxing power if the owner is a non-resident," and cites the same cases cited by the New York court, and St. Louis vs. The Ferry Company, *supra*, to support the proposition. From what has already been said, it appears that the court asserted the proposition more broadly than it is stated in the cases cited. All other cases coming to my attention, where the facts are parallel to those of the present case, maintain the

validity of the tax.    In Minturn vs. Hays, 2 Cal. 590, S. C. 56 Am. Dec. 366, it was held that "a steamboat whose owners reside in New York, by whom it was sent to San Francisco and used in navigation within the State, was liable to assessment and taxation within the State, although it was shown that taxes upon the same were paid in New York.    In disposing of the case the court said that any other construction of the law would be a singular one, "and its practical effect would be that non-resident foreigners would receive the protection of the State in the enjoyment and in the profitable pursuits of commerce and traffic free from any of the burdens of government, and that these shall be borne exclusively by the resident citizens of the State who enjoy no greater benefits and receive no higher protection.    *    *    *    That the plaintiffs pay taxes upon the same property in the State of New York, is no ground of complainant against the exercise of a legitimate act of sovereignty by the State of California.    I can see no reason why the power of taxation should be conceded to one and not to the other, especially as in the case of the one the property is without, and in the case of the other it is within her limits."    The same principle is stated in Battle vs. Mobile, 9 Ala. 234, S. C. 44 Am. Dec. 438, and in National Dredging Company vs. State, 99 Ala. 462, 12 South. Rep. 720.    A useful discussion of the question of the *situs* of vessels for taxation can be found in Mayor, etc., of Mobile vs. Baldwin, 57 Ala. 61, S. C. 29 Am. Rep. 712.    I quote only the following:    "Protection is the legal and constitutional consideration of taxation, and that must be presumed to be afforded where it is necessary and a duty.    If the owner of personal property separate it

from his domicile—commits it to another jurisdiction, so that it is not distinguishable from other property of a like kind within that jurisdiction, or from similar property casually, in the usual course of its use and enjoyment, coming within that jurisdiction—he takes it away from the jurisdiction of his domicile and commits it, not to the comity, but to the power of the place to which he transfers it."

The latest utterance upon the subject, and with which I fully agree, is from our neighboring sister State of Alabama in the case of National Dredging Company vs. State, *supra*. That was a case almost parallel with the present. The corporation in that case, which sought to have its property exempted, was a foreign corporation domiciled in the State of Delaware. A part of the property sought to be exempted from taxation was a steam tug called the Curtis, which was duly registered under the laws of the United States at Wilmington, in said State. It was engaged in carrying on a dredging contract in the channel of Mobile bay. In its petition it alleged that the completion of the contract would "occur shortly," when it would be removed. The court did not consider such steam tug exempt. It said: "With respect to the tug boat Curtis, a special consideration is advanced in support of its non-taxability. It is a seagoing vessel, propelled by steam, and is entitled to registry under statutes of the United States at the port of its owner's domicile. As matter of fact, it is registered at the custom house in the city of Wilmington, Delaware. On this the contention is that that being home, it can not be taxed elsewhere. There are many cases which hold that such vessel, engaged in commerce between its home port and others, or even

wholly between other ports than that of its registry, can be taxed only at the port of registry. It is not our purpose to question these decisions; it is not necessary that we should. They all proceed upon the theory that vessels thus engaged are never in foreign jurisdiction except *temporarily*, and as an incident to the commerce to which they are devoted, and hence that they do not and can not acquire a *situs* in foreign ports for the purpose of taxation; they do not become incorporated with the property of other States and countries which they touch intermittently, are never indefinitely there, and their business, the work they perform, the uses to which they are put, is not done and performed within, and are not local to, the foreign State or country. These considerations can have no application here. The tug Curtis is not engaged in commerce, foreign or interstate. Its business is wholly within Alabama. It is not here temporarily, but indefinitely. It is as much a part of the property of the State for taxation as if it had been chartered for an indefinite period of time to carry freight and passengers, or tow ships over the waters of Mobile bay between the city and Point Clear, *or as if its owner had devoted it to the carrying trade of the Alabama river;* and surely in these cases it could not be successfully insisted that it was not as much Alabama property for taxation as any other boat devoted exclusively to the navigation of the water courses of the State. The question, indeed, is at last one of *situs* in fact, and where this is shown neither foreign registry nor foreign ownership is of any consequence."

The only difference whatever in the situation of the tug Curtis and complainant's steamers is, that the tug was not engaged in commerce, foreign or interstate.

The concluding sentences quoted above, however, demonstrates conclusively that its engagement in such commerce if wholly within the State of Alabama, would not have affected the decision of the court as to the taxability of the property. I do not think the steamers Everglade and Welaka should be exempt from taxation upon the facts of this case; nor that their taxation would be in conflict with the decisions of the United States Supreme Court. These named steamers are property as much as any other property in the State; they obtain their full share of protection from the laws and government of this State. Our statute makes all such property taxable, and I do not think they should escape their just share of the public burden.

I think the decree of the Circuit Court should have been reversed with directions.